# HELWIG *v.* UNITED STATES.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No 65. Argued November 4, 1902.—Decided February 23, 1903.

That part of section 7 of the customs administrative act of 1890 which provides that where the appraised value of any article of imported merchandise shall exceed by more than ten per centum the value declared in the entry, there shall be levied, collected and paid in addition to the regular duties a further sum equal to two per centum of the total appraised value for each one per centum that such appraised value exceeds the value declared in the entry, is penal in its nature and the additional duties imposed are a penalty; and the District Court has exclusive jurisdiction of

a suit brought by the United States to recover the additional duties imposed under such section and the Circuit Court has no jurisdiction of such suit.

THIS case comes before the court upon a certificate from the United States Circuit Court of Appeals for the Second Circuit. The certificate contains the following statement:

" In February and March, 1895, Rudolph Helwig, plaintiff in error, made three certain importations of wood pulp into the United States, entering the same at the custom house at the port of New York. As the facts are substantially the same in respect to each importation, except as to values, amounts, date, etc., they are spoken of herein as one importation.

" At the time when said wood pulp was imported the duty imposed by law on wood pulp was ten (10) per centum ad valorem, paragraph 303, act of August 28, 1894.

" Upon making the entries at the custom house, Helwig declared the invoice and market value to be marks 191 per ton ; the aggregate invoice value of all three importations was $13,252.00 in United States currency ; at the time of making the entries Helwig paid to the collector of customs $1325.20, being the duty upon said wood pulp at the rate of ten (10) per centum ad valorem based upon the invoice value.

" The merchandise was thereafter appraised by the United States appraiser, as provided in section 7 of the act of June 10, 1890, 26 Stat. 131, who reported that the foreign market value of said wood pulp was marks 263.70 per ton ; Helwig thereupon requested a reappraisement by a United States general appraiser, in accordance with section 13 of the act of June 10, 1890 ; a reappraisement was had, and the United States general appraiser reappraised the market value of said wood pulp at marks 245 per ton net ; thereupon Helwig appealed to the board of United States general appraisers, in accordance with said section 13 of the act of June 10, 1890, and said board affirmed the decision of the United States general appraiser, thereby deciding that the foreign market value of said wood pulp was marks 245 per ton net, and making an advance over the invoice and entered value of over twenty-seven per centum.

" Thereupon the collector of customs liquidated said entries,

fixing the dutiable value of all of said merchandise at $16,792.20, and computing the duty thereon at the rate of ten per centum at $1679.20, and made demand upon said Helwig for the sum of $354, being the difference between the amount already paid by Helwig and the amount of duty at the rate of ten (10) per centum ad valorem found to be due on said final reappraisement; thereafter Helwig paid the sum of $354, and that amount is not in question on this appeal.

"At the time the collector of customs found said additional sum of $354 to be due, as aforesaid, he also found and decided that there was due from Helwig to the United States the further sum of nine thousand and sixty-seven dollars and sixty-eight cents ($9067.68), and made demand for said amount, said amount being the further sum in addition to the duties imposed by law, ascertained and fixed as provided in section 7 of the said act of June 10, 1890, being 2 per centum of the total appraised value of said merchandise for each 1 per centum that such appraised value exceeded the value declared in the entry.

"Before the commencement of this action Helwig duly presented his petition to the United States District Court for the Southern District of New York, claiming that said sum of nine thousand and sixty-seven dollars and sixty-eight cents ($9067.68) was a penalty, and praying that the district judge would cause an investigation of the facts to be made, in accordance with section 5292 of the Revised Statutes and sections 17 and 18 of the act of June 22, 1874, 18 Stat. 186, and cause the facts to be stated and transmitted to the Secretary of the Treasury, and praying that said penalty be remitted on the ground that it had been incurred without willful negligence or intent to defraud.

"The said district judge caused such summary investigation to be made, and a statement of the facts shown thereon was duly transmitted to the Secretary of the Treasury, who, thereafter, and on the 6th day of July, 1898, found and decided that said penalties had been incurred without willful negligence or intention of fraud on the part of said Helwig, and thereupon

mitigated the penalties to one half of the amount thereof, namely, $4533.84.

"Subsequently the collector of customs relinquished said entries, reducing the amount of said further sum to $4533.84, and again made demand upon Helwig for payment. As Helwig did not pay the amount suit was commenced against him in the Circuit Court for the Southern District of New York on the 24th of August, 1898. Upon learning of the pendency of that suit, however, the Secretary of the Treasury advised the collector that he revoked his decision of the 6th of July, 1898, and directed the collector to reliquidate the entries at the original amount and to request the United States attorney to institute suit for nine thousand and sixty-seven dollars and sixty-eight cents ($9067.68).

"The collector followed these instructions and again reliquidated the entries accordingly.

"The suit then pending was discontinued and the present action begun, including the full amount of the penalty, namely, nine thousand and sixty-seven dollars and sixty-eight cents ($9067.68).

"The case was tried at the Circuit Court upon an agreed statement of facts.

"Upon the reading of the agreed statement of facts, the plaintiff in error moved to dismiss the complaint and for the direction of judgment in his favor, on the ground that the action was to recover a penalty or penalties arising under the customs laws, and that under the provisions of sections 629 and 563 of the Revised Statutes the United States Circuit Court had no jurisdiction in such an action. The motion was denied and plaintiff in error duly excepted.

"The court subsequently directed judgment in favor of the United States for the amount of nine thousand and sixty-seven dollars and sixty-eight cents ($9067.68), together with interest and costs.

"The defendant thereafter sued out his writ of error to this court.

"The sum for which judgment was rendered, namely, nine thousand and sixty-seven dollars and sixty-eight cents

($9067.68), being the 'further sum' accruing 'in addition to the duties imposed by law,' upon wood pulp, under the provisions of section seven of the act of June 10, 1890."

Upon these facts the court has asked the following question:

"Has the United States Circuit Court jurisdiction of an action to recover the aforesaid 'further sum' accruing 'in addition to the duties imposed by law,' under the provisions of section seven of the act of June 10, 1890, 26 Stat. 131?"

*Mr. Henry W. Rudd* for plaintiff in error.

*Mr. Assistant Attorney General Hoyt* for defendant in error. *Mr. James A. Finch* was on the brief.

MR. JUSTICE PECKHAM, after making the foregoing statement of facts, delivered the opinion of the court.

That part of section 7 of the customs administrative act of 1890, 26 Stat. 131, 134, which relates to the question involved in this case is set forth in the margin.[1]

---

[1] SEC. 7. . . . And the collector within whose district any merchandise may be imported or entered, whether the same has been actually purchased or procured otherwise than by purchase, shall cause the actual market value or wholesale price of such merchandise to be appraised; and if the appraised value of any article of imported merchandise shall exceed by more than ten per centum the value declared in the entry, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, a further sum equal to two per centum of the total appraised value for each one per centum that such appraised value exceeds the value declared in the entry; and the additional duties shall only apply to the particular article or articles in each invoice which are undervalued; and if such appraised value shall exceed the value declared in the entry more than forty per centum, such entry may be held to be presumptively fraudulent, and the collector of customs may seize such merchandise and proceed as in cases of forfeiture for violations of the customs laws; and in any legal proceedings which may result from such seizure the fact of such undervaluation shall be presumptive evidence of fraud, and the burden of proof shall be on the claimant to rebut the same, and forfeiture shall be adjudged unless he shall rebut said presumption of fraudulent intent by sufficient evidence: *Provided*, That the forfeitures provided for in this section shall apply to the whole of the merchandise or the value thereof in the case or package containing the particular article or articles in each invoice

By section 629, Revised Statutes, subdivisions third and fourth, jurisdiction is granted to the Circuit Court of all.suits at common law where the United States, or any officer thereof, suing under the authority of any act of Congress, are plaintiffs, and of all suits at law or equity, arising under any act providing for revenue from imports or tonnage, except suits for penalties and forfeitures.

Under this section the plaintiffs claim the Circuit Court had jurisdiction in this action as one at common law, etc., or as one arising under any act providing for revenue, and not being one for a penalty or forfeiture.

By section 563, Revised Statutes, jurisdiction is conferred upon the District Court in various cases, the third subdivision of which section gives it jurisdiction of all suits for penalties and forfeitures incurred under any law of the United States.

It has been heretofore held that the act conferred exclusive jurisdiction upon the District Court in suits for penalties or forfeitures. The early cases to that effect are cited in *United States* v. *Mooney,* 116 U. S. 104; *Lees* v. *United States,* 150 U. S. 476, 478, and the above two cases reiterate the same. holding. It would seem to be beyond the necessity of further argument since the decision of these cases that the jurisdiction is exclusive in the District Court of all actions to recover for a penalty or forfeiture. Indeed, the counsel for the government frankly concedes that if this action be one to recover a penalty or forfeiture exclusive jurisdiction is by the law vested in the District Court.

The sole question is whether the sum imposed by section 7, already quoted, is a penalty?

Without other reference than to the language of the statute itself, we should conclude that the sum imposed therein was a penalty. It is not imposed upon the importation of all goods, but only upon the importer in certain cases which are stated

which are undervalued: *And provided further,* That all additional duties, penalties, or forfeitures, applicable to merchandise entered by a duly certified invoice shall be alike applicable to goods entered by a *pro forma* invoice or statement in form of an invoice. The duty shall not, however, be assessed upon an amount less than the invoice or entered value.

in the statute, and it is clear that the sum is not imposed for any purpose of revenue, but is in addition to the duties imposed upon the particular article imported, and in each individual case when the sum is imposed it is based upon the particular act of the importer. That particular act is his undervaluation of the goods imported, and it is without doubt a punishment upon the importer on account of it. Whether the statute defines it in terms as a punishment or penalty is not important, if the nature of the provision itself be of that character. If it be said that the provision operates as a warning to importers to be careful and to be honest, it is a warning which is efficacious only by reason of the resulting imposition of the "further sum," in addition to the duties, provided for by the statute.

This case is a good illustration of the penal features of the statute. The aggregate value of the merchandise as entered by the importer was $13,252, and the amount of duty provided for by the statute (ten per centum) was $1325.20. The final reappraisement made under section 13 of the same act was $16,792.20, and the duties $1679.20, the difference being $354; yet this difference in valuation between the importer and the appraisers, though the valuation of the importer was made without intent to defraud, brought upon him the imposition, under the statute, section 7, of the additional sum of $9067.68, being the "further sum" spoken of in the statute in addition to the payment of the $354 of duty, which was demanded of the importer by reason of this difference. Now what can this be but a punishment, or, in other words, a penalty for undervaluation, whether innocently done or not? It certainly was no reward of merit, and whether called a "further sum" or an "additional duty," or by some other name, the amount imposed was so large in proportion to the value of the merchandise imported, as to show beyond doubt that it was a sum imposed not, in fact, as a duty upon an imported article, but as a penalty and nothing else.

The statute also provides that, if the appraised value exceed by more than forty per centum the value declared in the entry, then the entry value is presumed fraudulent and the whole property is to be seized by the collector, who is to proceed as

in the case of a forfeiture, and the burden of showing that the undervaluation was not fraudulent is cast upon the importer. Now, whether the excess in valuation on the reappraisement is more or less than forty per centum of the value declared in the entry, seems to be important only upon the question of the presumption of fraud and the consequent forfeiture of the whole property. If more than forty per centum, the presumption of fraud is declared by the statute and the property is forfeited, unless the importer shows there was no fraud. If less, the sum imposed by the statute is to be paid, but the property is not forfeited. In the case of good faith, it is simply a less penalty than in the case of fraud. It is, however, argued that the error for undervaluation not fraudulent is repaired by imposing an additional duty on the particular goods in such invoice which have been undervalued, and there is no penalty, a simple enlarged duty upon merchandise, while in the other case, the presumed fraudulent undervaluation, (if the fraud be found,) the whole of the merchandise is forfeited by the expressed terms of the statute.

Whether the error is repaired by imposing the sum named as an additional duty, is not material in the consideration of the nature of the imposition. It is still a punishment and nothing else, because of the carelessness, ignorance or mistake, without fraudulent intent, upon the part of the importer. If the fraudulent intent were present, the penalty would be enlarged and the goods forfeited. In both cases, the nature of the penalty is the same, only in one case it is satisfied by the imposition of a certain amount of money, while in the other a total forfeiture is demanded.

To the question, why the additional sum is imposed in the one case, or why the goods are forfeited in the other, there can be but one answer. It is because of the action of the importer with relation to the importation in question, and in one case such action calls down upon his head punishment by way of a money imposition, and in the other it is a forfeiture of his property. In either case there is to be punishment, either for carelessness or fraud.

Although the statute, under section 7, *supra*, terms the

money demanded as " a further sum," and does not describe it as a penalty, still the use of those words does not change the nature and character of the enactment. Congress may enact that such a provision shall not be considered as a penalty or in the nature of one, with reference to the further action of the officers of the government, or with reference to the distribution of the moneys thus paid, or with reference to its effect upon the individual, and it is the duty of the court to be governed by such statutory direction, but the intrinsic nature of the provision remains, and, in the absence of any declaration by Congress affecting the manner in which the provision shall be treated, courts must decide the matter in accordance with their views of the nature of the act. Although the sum imposed by reason of undervaluation may be simply described as " a further sum " or " an additional duty," if it is yet so enormously in excess of the greatest amount of regular duty ever imposed upon an article of the same nature, and it is imposed by reason of the action of the importer, such facts clearly show it is a penalty in its intrinsic nature, and the failure of the statute to designate it as a penalty, but describing it as " a further sum," or " an additional duty," will not work a statutory alteration of the nature of the imposition, and it will be regarded as a penalty when by its very nature it is a penalty. It is impossible, judging simply from its language, to hold this provision to be other than penal in its nature.

But it is urged that although this part of the section may be of a penal character within the ordinary or general meaning of the words, yet as used in the various statutes upon the subject it will be seen that those words are not regarded by Congress as imposing a penalty and should not be so treated by the court. If it clearly appear that it is the will of Congress that the provision shall not be regarded as in the nature of a penalty, the court must be governed by that will. This leads to a short examination of the previous legislation upon the subject.

By the act of April 20, 1818, chapter 79, sec. 11, 3 Stat. 433, 436, the manner of collecting the additional sum imposed by reason of undervaluation was by adding fifty per centum to

the appraised value of the property, and on that aggregate amount the usual duties were to be estimated. The twenty-fifth section of that act enacted " That all penalties and forfeitures incurred by force of this act, shall be sued for, recovered, distributed, and accounted for in the manner prescribed by " the act of March 2, 1799, 1 Stat. 627, " and may be mitigated or remitted, in the manner prescribed " by the act of March 3, 1797, 1 Stat. 506.

In an opinion delivered by Attorney General Wirt, February, 1821, 5 Opinions of Attorneys General, 730, that officer ruled that the fifty per centum provided by section 11 could not be remitted, because he thought that by the language of the statute Congress permitted the Secretary of the Treasury to remit penalties or forfeitures only in such cases where by the provisions of the act they could be recovered by suit. He did not deny that the additional sums imposed by statute were in the nature of penalties, but the fifty per centum not being recoverable by suit, he thought the Secretary of the Treasury had no power to mitigate or remit.

By the act of March 1, 1823, 3 Stat. 729, 734, sec. 13, reference was made to a penalty of fifty per centum, (the same provision in substance as is set forth in the statute under consideration, only different amounts are provided for,) and Congress described the provision as a penalty.

Section 9 of the act passed May 19, 1828, 4 Stat. 270, 274, provided that where the appraisement exceeded by ten per centum the invoice value there was to be imposed in addition to the duty imposed by law on the same property fifty per centum of the duty imposed on the same goods when fairly invoiced, and this amount is described in the statute as a duty of fifty per centum. Further on in the same section, it is provided that the penalty of fifty per centum imposed by the thirteenth section of the act approved March 1, 1823, *supra*, was not to attach to any of the property subject to the additional duty of fifty per centum imposed by section 9 of the act of 1828. The sum imposed was in its nature no more a penalty under the thirteenth section of the act of 1823 than it was a penalty under the ninth section of the act of 1828, yet in the earlier act

it is described as a penalty and in the later a duty. The mere description was evidently not regarded as of vital importance.

By section 17 of the act of 1842, chapter 270, 5 Stat. 548, 564, the amount imposed is stated to be " in addition to the duty imposed by law on the same, there shall be levied and collected, on the same goods, wares, and merchandise, fifty per centum of the duty imposed on the same, when fairly invoiced." Although this fifty per centum, mentioned in the above act, is not designated in terms as a penalty, yet it was regarded as such by the then Attorney General, Legare, who in response to the question put by the Secretary of the Treasury, whether the latter had power to remit it as a penalty within the meaning of the act of 1795, stated that in his opinion he had, as it was very clear that the fifty per centum was a penalty. 4 Opinions of Attorneys General, 182.

By the act of February 11, 1846, relative to collectors and other officers of the customs, 9 Stat. 3, section 3, it was provided that no portion of the additional duties mentioned in the seventeenth section of the act of 1842, *supra,* " should be deemed a fine, penalty, or forfeiture " for the purpose of being distributed to any officer of the customs, but the whole amount thereof when received was to be paid directly into the Treasury. This would seem to be a recognition on the part of Congress that the additional duties mentioned in the seventeenth section would be regarded as penalties, and that it was necessary to provide specifically that they should not be so treated, so far as distribution was concerned. It may possibly be that the legislation was enacted in order to meet the construction of the seventeenth section put upon it by the Attorney General in his answer to the Secretary of the Treasury, June 7, 1843. At any rate, the opinion and the legislation show that the additional duties had been regarded as penalties, and that such construction was only altered by Congress to the extent of providing that for the purpose of being distributed to any customs officer they should not be so regarded.

The statute of July 30, 1846, chapter 74, 9 Stat. 42, relating to duties, by its eighth section provided that, in case of undervaluation, in addition to the duties imposed by law, a duty of

twenty per centum ad valorem on such appraised value should be imposed, using the same language substantially as had been used in the seventeenth section of the act of 1842, only reducing the amount from fifty to twenty per centum.

By the twenty-third section of the act approved June 30, 1864, chapter 171, 13 Stat. 202, 216, it is again declared that, "in addition to the duties imposed by law on the same, there shall be levied, collected, and paid a duty of twenty per centum ad valorem on such appraised value.".

The language used in these various statutes in making provision for the imposition of additional sums on account of the action of the importer in undervaluing the goods imported, does not give any clear indication on the part of Congress that the sum imposed shall not be regarded as a penalty excepting as to the act of 1846, (9 Stat. 3,) relative to collectors, etc., and there the provision is limited to the statement that the sum shall not be deemed a fine, penalty or forfeiture for the purpose of being distributed to any officer of the customs. At that time, it must be remembered, moiety legislation was in force, by which a certain proportion of some fines and penalties was distributed to the customs officer.

By the act of July 29, 1897, chapter 11, section 32, 30 Stat. 151, 212, Congress has plainly directed that the additional duty therein spoken of shall not be construed as a penalty, and shall not be remitted nor payment thereof in any way avoided, with the exception stated in the statute. As this statute was passed subsequently to the importation mentioned in this case, it does not affect the question as to the character of the legislation which preceded it and which had no such provision as is contained in the last act. It was under the act as it stood in the customs administrative act of 1890, the same under which the question here arises, that on September 9, 1893, Mr. Olney, who was then Attorney General, gave an opinion upon this same question in response to a communication from the Secretary of the Treasury, 20 Opinions Attorneys General, 660. In that opinion the Attorney General reviewed the previous legislation of Congress on this subject and came to the conclusion that, as the law then stood, the additional duty, so-called, was in its

nature a penalty, and that being so, it was subject to remission like other fines, penalties and forfeitures by the Secretary of the Treasury.

Referring to some of the decisions of this court, we think it is made quite apparent that these provisions of the statute were regarded as in the nature of penalties.

In *Bartlett* v. *Kane*, 16 How. 263, decided in 1853 under the statute of 1846, where the question of drawback arose, the additional duty of twenty per centum mentioned in the act was regarded as in the nature of a penalty. Mr. Justice Campbell, in delivering the opinion of the court, (at page 274,) said:

" An examination of the revenue laws upon the subject of levying additional duties, in consequence of the fact of an undervaluation by the importer, shows that they were exacted as discouragements to fraud, and to prevent efforts by importers to escape the legal rates of duty. In several of the acts, this additional duty has been distributed among officers of the customs upon the same conditions as penalties and forfeitures. As between the United States and the importer, and in reference to the subject of drawback and debenture, it must still be regarded in the light of a penal duty. . . . It does not include, in its purview, any return of the forfeitures or amercements resulting from illegal or fraudulent dealings on the part of the importer or his agents. Those do not fall within the regular administration of the revenue system, nor does the government comprehend them within its regular estimates of supply. They are the compensation for a violated law, and are designed to operate as checks and restraints upon fraud and injustice."

In *Greely* v. *Thompson*, 10 How. 225, Mr. Justice Woodbury, speaking of the language on this subject used in the act of 1842, (at page 238,) said : " Especially in a penal provision, it could not seem judicious, any more than legal, to .extend it beyond the clear language of the act ; " and he referred to the immediately succeeding case of *Maxwell* v. *Griswold*, at page 242. In that case, as stated by Mr. Justice Woodbury, in the opinion of the court, (at page 255,) " The importer had put.in his invoice the price actually paid for the goods, with charges, and

proposed to enter them at the value thus fixed. But the collector concluded in that event to have them appraised, and the value would then, by instructions and usage at New York, be ascertained as at the time of the shipment, which was considerably higher, and would probably subject the importer, not only to pay more duties, but to suffer a penalty. The importer protested against this, but in order to avoid the penalty, under such a wrong appraisal, adopted the following course." And again, in speaking of the manner in which the question arose, the justice continued : " The importer, knowing that this would subject him to a severe penalty, in order to avoid it, felt compelled to add to his invoice the amount which the price had risen between the purchase and the shipment." This is in relation to the language already referred to in the act of 1842.

In *Ring* v. *Maxwell*, 17 How. 147, the court did not find it necessary to determine whether the additional duties prescribed under the acts of 1842 and 1846 might have been deemed penalties, because the court was of opinion that whatever was the nature of the sums levied as additional duties under the eighth section of the act of 1846, they were not distributable to the customs officers as penalties.

In *Stairs* v. *Peaslee*, 18 How. 521, it was said that the penal duty of twenty per centum exacted by the eighth section of the tariff act of July 30, 1846, 9 Stat. 43, was properly levied upon goods entered at their invoice value. Mr. Chief Justice Taney, (page 527,) in speaking of the language of the act of 1842, 5 Stat. 563, *supra*, providing for levying an additional fifty per centum because of undervaluation, said :

. " It would seem, however, that this provision was found by experience to operate, in some instances, unjustly upon the importer ; and that it sometimes happened that, under favorable opportunities of time or place, goods were purchased in a foreign country for ten per cent less than their market value in the principal markets of the country from which they were imported into the United States. And if they were so invoiced, the importer was liable for the above-mentioned penal duty, although he was willing and offered to make the entry at their dutiable value. The fact that the invoice value was ten per

cent below the standard of value fixed by law, subjected him to the penal duty ; and he had no means of escaping from it. The eighth section of the tariff act of 1846 was obviously intended to relieve the importer from this hardship."

See also *Swanston* v. *Morton,* 1 Curtis, 294, where the court described it as an additional duty, by way of penalty, and the court was by no means clear that the strictly technical term appropriate to such a demand would not be the word " penalty," though in that case it did not feel compelled to go so far.

In *Passavant* v. *United States,* 148 U. S. 214, the question of whether these sums are to be regarded as penalties or simply additional duties was not regarded as material, and consequently was not decided in terms, although the case of *Bartlett* v. *Kane, supra,* was quoted from as to the sums imposed by statute being "a compensation for a violated law," etc.

From these various decisions it is seen that the courts have either regarded the language used in these statutes as penal in its nature, and that the sums imposed under the various sections of the statutes were imposed as penalties or the property forfeited, for the careless or fraudulent conduct of the importer in making an undervaluation, or else they have declined to decide the question, because not involved. We think the sum sought to be recovered in this action was a penalty, and the Circuit Court, therefore, had no jurisdiction.

Whether the Secretary had the power, after he had once reduced the amount to be paid, to raise it to the original sum, as stated in the foregoing certificate, is not material to the question now before us, and we express no opinion regarding it.

The question propounded by the Circuit Court of Appeals is answered in the negative, and it will be

*So certified.*