UNITED STATES v. BROWN-ALASKA CO.

(First Division.  Juneau.  April 28, 1910.)

Nos. 566–568A.

1. CUSTOMS DUTIES (§ 75*)—VALUE.

The defendant imported into Alaska from British Columbia certain quantities of coke which it valued at $3.50 per ton, and upon which it paid duty at 20 per cent. ad valorem.  Subsequently the United States reappraised the coke, raised the value to $5 per ton, and brought this suit to recover the sum alleged to be due on the undervaluation.  *Held*, the value of the coke must be fixed in the principal markets and not at the ovens where produced.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 179–189; Dec. Dig. § 75.*]

2. CUSTOMS DUTIES (§ 85*)—COURT REVIEW.

The rule is that the courts will not, in the absence of fraud, undertake to review the action of customs officials on the question of value of imported merchandise.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 201–206; Dec. Dig. § 85.*]

3. BANKRUPTCY (§ 314*)—CUSTOMS DUTIES.

Additional customs duties levied on reappraisement of coke imported into Alaska are not penal in their nature and may be collected from a bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 469–473, 478, 483–487, 489, 490; Dec. Dig. § 314.*]

These suits are brought by the United States to recover duties on account of undervaluation of importations of coke by the defendants.  The complaints allege that defendants imported into the United States from the province of British Columbia, and entered at the subport of Ketchikan, certain coke of the value, at the principal markets of British Columbia, of $5 per ton, and subject to an ad valorem duty of 20 per cent.; that the defendants valued and entered the coke at $3.50 a ton, paying the 20 per cent. ad valorem upon the latter valuation; that this was an undervaluation of $1.50 per ton; that thereupon the collector of customs appraised it at

$5 per ton, and levied in addition to the 20 per cent. imposed by law upon such excess value and additional duty of 42 per cent. of the total appraised value, that being the amount of percentage that such appraised value exceeds the value declared in the entry; that defendants have not paid any of such additional duties so imposed. The prayer is for judgment for the added 20 per cent. and 42 per cent. added duties.

The defendants have answered, denying that the coke was of a greater value than $3.50 per ton, and put in issue the other material allegations of the complaint, and by way of affirmative defense admit that they imported such coke as alleged from the province of British Columbia into the United States and entered it in the district of Alaska at the subport of Ketchikan, and allege that the value of the coke at the ovens did not exceed the sum of $3.50; that the defendants, at the request of the deputy collector of customs at the subport of Ketchikan, entered said coke at a valuation of $3.50 per ton, paying duties on such valuation; that, more than a year after such appraisement by the deputy collector, another appraisement was arbitrarily made at $5 per ton under instructions from the Treasury Department or the Secretary of the Treasury, without the exercise of any discretion by the appraising officer; that defendants were refused the right of appeal from such appraisement by the general appraiser; that the reappraisement at $5 per ton made by the deputy collector is incorrect because valued at the wrong place, to wit, f. o. b. Indian wharf instead of at the coke ovens or place of production. A dismissal is prayed.

By reply the plaintiff puts in issue all the material allegations of the affirmative defense, denying that such entries were made by the defendants in any way upon the advice of the deputy collector, and alleging such entries were made solely by the defendants, and that the only appraisement ever made of said coke was that of $5 per ton.

A supplemental answer was interposed by the defendants, setting up that each of the defendants had, after the institution of these suits, been adjudged a bankrupt, and that the bankruptcy proceedings are still pending in the Circuit Court

for the Western District of Washington; that the claims made in these suits by the United States should properly be presented in such proceedings in that court.

To this supplemental answer the plaintiff has demurred upon the ground that it does not state facts sufficient to constitute a defense, and has also replied, putting in issue the allegations of the supplemental answer.

John J. Boyce, U. S. Dist. Atty., of Santa Barbara, Cal.
Winn & Burton, of Juneau, for defendant.

CUSHMAN, District Judge. These cases were tried together to the court without a jury. Besides the introduction in evidence of the documents and correspondence in the customs office connected with the importations involved, the collector of customs and the deputy collecter at Ketchikan, at the time the importations were made, were both examined as witnesses.

The defendants having admitted the importations, the issues are narrowed and are as follows: The question of the value of the importations to be made the basis for the imposition of duty. This is a mixed question of law and fact. There was no evidence introduced upon the trial of any value other than that of $5 per ton. Defendants contend that the controlling value of the coke is that at the ovens where produced. This is clearly wrong, for section 10 of the Tariff Act June 10, 1890, c. 407, 26 Stat. 136, 2 Fed. St. Ann. p. 620, provides:

"That it shall be the duty of the appraisers * * * by all reasonable ways and means in his or their power to ascertain, estimate, and appraise * * * the actual market value and wholesale price of the merchandise at the time of exportation to the United States, in the principal markets of the country whence the same has been imported."

The rule of law established by the authorities is that the courts will not, in the absence of fraud, undertake to review the action of the customs officials on the question of value of imported merchandise. Hilton v. Merritt, 110 U. S. 97, 3 Sup. Ct. 548, 28 L. Ed. 83; Auffmordt v. Hedden, 137 U. S. 323–325, 11 Sup. Ct. 103, 34 L. Ed. 674; Origet v. Hedden, 155 U. S. 228, 237, 238, 15 Sup. Ct. 92, 39 L. Ed. 130; Unit-

ed States v. Kenworthy; 68 Fed. 904, 908, 16 C. C. A. 61;
United States v. Tiffany & Co., 151 Fed. 473, 474, 81 C. C.
A. 11; United States v. Mexican International Ry. Co., 151
Fed. 545, 548, 81 C. C. A. 61.

The only provision for revision by the courts made by the
statutes is limited to "the consideration of the law and the
facts respecting the classification of such merchandise and
the rate of duty imposed thereon under such classification."
Section 15 of the Tariff Act of June 10, 1890, 2 Fed. St. Ann.
p. 627; Foster v. Vocke (C. C.) 60 Fed. 745; Passavant v.
United States, 148 U. S. 214, 13 Sup. Ct. 572, 37 L. Ed. 426;
In re Fassett, 142 U. S. 479, 12 Sup. Ct. 295, 35 L. Ed. 1087.

Defendants contend that the appraisement at $5 per ton was
in fact a reappraisement arbitrarily made by the collector,
without the exercise of any discretion on his part and at the
dictation of the Secretary of the Treasury. This conclusion
is unsupported by the evidence and positively contradicted by
that of the deputy collector, Mr. Beagle. Even if instructions
were given the collector in this matter by his superior officers
in the Treasury Department, coupled with information fur-
nished and obtained by him as some of the evidence might
indicate, it is not sufficient upon which to make a finding
of an arbitrary exercise of power by the deputy collector,
without the exercise of his discretion. Section 10 of the Tar-
iff Act provides that the appraiser shall "by all reasonable
ways and means in his power ascertain, estimate and ap-
praise" the value. This would not preclude his considering
information furnished or findings made by his superior offi-
cer or other officer in his department.

Defendants contend that the action of the deputy collector
in taking the invoice price of importations and collecting the
estimated duties thereon exhausted his power, and that his ac-
tion thereafter in liquidating the duties January 9, 1906, was
a reappraisement and wholly unauthorized. There is no evi-
dence to show that any appraisement became final prior to
that of $5 per ton made January 9, 1906, or that there was
anything more done on his part than the acceptance of 20
per cent. paid on the invoiced price of the imported merchan-

dise; this does not follow. 2 Fed. St. Ann. p. 622, § 13; Customs Reg. 1908, art. 862.

Defendants contend that the coke was entered at a valuation of $3.50 per ton at the request and suggestion of the deputy collector. There is no evidence to support this claim, and it is contradicted by the evidence of the deputy collector, Mr. Beagle. The defendants further contend that the general appraisers refused them the right of an appeal from the appraisal of $5 by the deputy collector. The three entries involved in these cases were made in the months of June, October, and November of 1905. On January 9, 1906, the coke in each entry was appraised at $5 per ton. On February 10, 1906, in one case, and on February 21, 1906, in the other two cases, the importers notified the collector that they considered the apraisement too high and requested reappraisement. On July 12, 1906, the general appraiser declined to consider their application for want of jurisdiction. On October 18, 1906, the importers appealed from the decision of the general appraiser to the board of general appraisers. On January 8, 1907, the board of general appraisers rejected the appeal, finding that it was without jurisdiction to act, for the reason that the appeal from the general appraiser was not taken within the time provided by statute.

Section 13 of the Tariff Act of June 10, 1890, 2 Fed. St. Ann. p. 622, provides:

"If the importer * * * shall be dissatisfied with the appraisement, * * * he may, within two days thereafter, give notice to the collector, in writing, of such dissatisfaction, on the receipt of which the collector shall at once direct a reappraisement of such merchandise by one of the general appraisers. The decision of the appraiser * * * or of the general appraiser, in cases of reappraisement, shall be final and conclusive as to the dutiable value of such merchandise against all parties interested therein, unless the importer * * * shall be dissatisfied with such decision, and shall, within two days thereafter, give notice to the collector in writing, of such dissatisfaction."

There is no evidence that the defendants were deprived of the right of appeal, except by not taking it within the statutory time.

It may be and probably is true that the brief time of two days allowed for the appeal will, in a country in the situation of Alaska, with few ports, widely scattered industries, and meager means of communication, work a hardship in individual cases, but that is a condition, if it exists, to be cured by Congress and not the courts. All countries protect their revenues by the most summary and stringent laws and regulations, and the remedies of the importer provided by statutes in this matter are the only ones which the courts can recognize, and, if the statutory remedies are not resorted to within the time allowed thereunder, courts will not find other remedies. United States v. Strauss (D. C.) 55 Fed. 388; In re Guggenheim Smelting Co., 112 Fed. 517, 50 C. C. A. 374; United States v. Schefer (C. C.) 71 Fed. 959.

There was no proof introduced to support the allegations that the defendants had been adjudged bankrupt since the beginning of these suits, nor that such proceedings were still pending. If it were conceded to be true and that the court in which the proceedings were pending had exclusive jurisdiction over the estate of the bankrupts, it would not follow that this court could not properly determine the issues in these cases.

It is urged that the 42 per cent. claimed upon the appraised value is a penalty, and that, under subdivision "j," section 57, of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3444]), it is for that reason not a claim allowable against such an estate. Even were the above premise conceded to be true, it would only be a matter of consideration for the bankruptcy court in marshaling the claims against the estate and not a ground to defeat a judgment in this court. But under statute and decision alike it would appear doubtful whether it is a penalty. In Helwig v. United States, 188 U. S. 605, at page 613, 23 Sup. Ct. 427, at page 430 (47 L. Ed. 614), under a former act such additional duty was held to be a penalty, but of that decision it is said:

"If it clearly appear that it is the will of Congress that the provision shall not be regarded as in the nature of a penalty, the court must be governed by that will."

This decision by the Supreme Court was rendered after the enactment of the present law, and the above language was used in view thereof, as is shown by the express reference on page 616 of 188 U. S., page 431 of 23 Sup. Ct. (47 L. Ed. 614), to the following language in the present act, found in section 7, 30 Stat. 211, 2 Fed. St. Ann. 616:

"Such additional duties shall not be construed to be penal and shall not be remitted"—

except in certain cases not here applicable.

Let findings and decree be prepared as prayed in the complaints in the above-entitled suits, but to the end that, if the judgment should be presented for allowance against the estates of the defendant's bankrupt, the courts administering such estates may, if it so desires, segregate the 42 per cent. additional duty allowed upon the appraised value from the 20 per cent. ad valorem duty imposed upon the excess of the appraised value over the entry value; let the findings clearly and in separate findings fix the total amounts of each.