LES PARFUMS DE MOLYNEUX *v.* UNITED STATES (No. 4176)[1]

[1] C. A. D. 36.

United States Court of Customs and Patent Appeals, February 13, 1939

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellant.

*Webster J. Oliver*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney, of counsel), for the United States.

[Oral argument December 5, 1938, by Mr. Place and Mr. Oliver]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, denying appellant's petition for the remission of certain duties, which accrued as additional duties, upon an impor-

tation from France of merchandise consisting of small quantities of various kinds of perfumes, powders, soaps, and lotions.

The decision of the trial court was based upon its construction of section 489 of the Tariff Act of 1930, which, so far as here pertinent, is the same as section 489 of the Tariff Act of 1922. No specific findings were made respecting the good faith, or lack of it, on the part of petitioner in entering at the values which it did, but, as the case is presented before us, it is agreed by counsel for the Government that the question of petitioner's intent at the time of entry is not in controversy under the facts as hereinafter recited.

The controversy presents an unusual stituation in that counsel for the Government fully concur with counsel for the petitioner as to both the facts and the law, and join in the contention that the decision of the trial court should be reversed.

The pertinent facts may be stated briefly as follows: The merchandise (which consisted, as stated in the brief on behalf of the appellant, of "one bottle or article each of 111 different kinds of perfumes, powders, and soaps, and one dozen bottles each of three kinds of lotions") was imported in 1929, during the life of the 1922 tariff act, in order to make a test case to determine the dutiable status of a so-called luxury tax assessed against such merchandise in France. Importer made warehouse entry of the merchandise at values which did not include the luxury tax and the local appraiser advanced the values to an amount which included it. Appellant appealed for reappraisement but another case involving the issue having been made up appellant's appeal was held in abeyance to await the determination of such other case. The issue reached this court in due course and was decided by us in June 1935, in the case of *Veolay, Inc., J. E. Bernard & Co., Inc. v. United States*, 23 C. C. P. A. (Customs) 101, T. D. 47766, where, affirming the decision of the United States Customs Court, we held the tax to be a part of the foreign value and, as such, necessary to be included in the dutiable value. Appellant's appeal for reappraisement was thereupon abandoned and the same was dismissed.

In the meantime, however, the merchandise (which it is agreed was not intended to be consumed in the United States being imported solely for test purposes and entered in warehouse) was exported, being returned to France, and no "regular" duties were ever collected upon it, but by reason of the undervaluation, the additional duties, remission of which is sought in this proceeding, had accrued. As we understand it, they have not been paid and there has been no final liquidation of the entry. It appears that the exportations were made under export entry numbers 55155 and 0590 of June 6, 1930, and July 7, 1933, respectively, so the first exportation was under the Tariff Act of 1922 and the last under the Tariff Act of 1930.

The pertinent law, as expressed in the act of 1922, reads:

SEC. 489. ADDITIONAL DUTIES.—If the final appraised value of any article of imported merchandise which is subject to an ad valorem rate of duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the entered value, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total final appraised value thereof for each 1 per centum that such final appraised value exceeds the value declared in the entry. Such additional duty shall apply only to the particular article or articles in each invoice that are so advanced in value upon final appraisement and shall not be imposed upon any article upon which the amount of duty imposed by law on account of the final appraised value does not exceed the amount of duty that would be imposed if the final appraised value did not exceed the entered value, and shall be limited to 75 per centum of the final appraised value of such article or articles. Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a manifest clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the Board of General Appraisers, upon a petition filed and supported by satisfactory evidence under such rules as the board may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. * * *

Upon the making of such order or finding, the additional duties shall be remitted or refunded, wholly or in part, and the entry shall be liquidated or reliquidated accordingly. Such additional duties shall not be refunded in case of exportation of the merchandise, nor shall they be subject to the benefit of drawback. * * *

In section 489 of the 1930 act, the word "manifest" is omitted before the expression "clerical error," and "the Board of General Appraisers" is changed to "the United States Customs Court." Also, in the 1930 act there was added with respect to the petition to the court that it might be filed "at any time after final appraisement and before the expiration of sixty days after liquidation."

The instant petition was timely filed.

The decision of the trial court was based upon the provision in the second paragraph of section 489 of the 1930 act, reading:

* * * Such additional duties shall not be refunded in case of exportation of the merchandise, * * * .

The court directed attention to the fact that the clause was transposed to a different position in the 1922 and 1930 acts from that in the 1897, 1909, and 1913 acts hereinafter referred to, and that the word "remit" appearing in those earlier acts was changed to "refund" in the latter acts, and, after reciting certain legislative history, said:

Since the provision was inserted to procure a strict observance of the law relating to the requirement of truthfully stating the value on entry, we can see no significance in the change of language, although in the instant case the entry has not been liquidated and, therefore, the Government has not come into possession of any amount which it could refund. We do not believe it to be the

province of the court to direct a collector to do something which the statute forbids his doing, assuming that this last prohibition would only relate to the collector's duties, while the earlier provision with reference to the granting of petitions for remission relates to the duties of the court. We should give effect to all provisions of the statute if it is possible so to do. It is therefore our opinion that this court should not direct a refund of the additional duties here assessed because of the fact that the proof shows the merchandise was exported, even though we be satisfied that the importer acted in good faith and with no intention to defraud. * * *

It is deemed proper here to elaborate somewhat upon the legislative history.

In the first place, it may be remarked that undervaluation of imported merchandise has been a subject which for a long period of time has engaged the attention of all branches of the Government having to do with customs matters, and the Congress from time to time has legislated in different ways concerning it.

In the case of *Bartlett* v. *Kane*, 57 U. S. 263, the Supreme Court construed a provision of the Tariff Act of 1842 relating to additional duties, and in the statement of the case on behalf of plaintiff Bartlett references were made to various statutes, one being as early as 1818. That 1818 act was referred to again by the Supreme Court in the case of *Helwig* v. *United States*, 188 U. S. 605, along with numerous other acts, one of them being an act of 1797, 1 Stat. 506. In this latter case the court construed section 7 of the Customs Administrative Act of June 10, 1890, 26 Stat. 131, which constituted quite a complete revision of the administrative laws applying to customs duties. It was in this act that the Board of General Appraisers (the name of which was changed to the United States Customs Court in 1926) was created.

The section 7, so construed in the *Helwig* case, *supra*, provided, among other things, additional duties in certain cases of undervaluation, but did not, as did later acts, provide, in effect, that such duties should not be regarded as penal, nor was any provision made in the section respecting the remission or refunding of such duties. While the decision of the Supreme Court was not rendered until 1903, the case grew out of importations made in 1895 under the 1894 tariff act. In its decision the court held, in effect, that the additional duties must be regarded as penal, because of the nature of the language used in the section and as such "subject to remission like other fines, penalties, and forfeitures by the Secretary of the Treasury." In the course of the decision it was said "If it clearly appear that it is the will of Congress that the provision shall not be regarded as in the nature of a penalty, the court must be governed by that will," and while the *Helwig* case, *supra*, was pending, Congress had, in fact, legislated on the subject in the 1897 tariff act.

On March 17, 1896, during the first session of the Fifty-fourth Congress, the House of Representatives considered and passed a bill (H. R. 7250) reported to that body from its Committee on Ways and Means (Cong. Record, 54th Cong., Vol. 28, Pt. 3, pages 2884 to 2907). The bill was designed to amend the Customs Administrative Act of June 10, 1890, above alluded to. The measure apparently did not pass the Senate during the Fifty-fourth Congress and we have not followed its history during that Congress beyond the proceedings in the House. The pertinency of referring to them lies in the fact that in the succeeding Congress, the Fifty-fifth, features of the bill so passed by the House during the Fifty-fourth Congress were embraced in the 1897 tariff act, historically known as the "Dingley tariff act." H. R. 7250, *supra*, during its consideration in the House, was in charge of Mr. Sereno Payne, who evidently was chairman of a subcommittee of the Ways and Means Committee (of which full committee Mr. Nelson Dingley, Jr., of Maine was chairman during that and several succeeding Congresses) and, while the debate was in progress, Mr. Payne, explaining the bill, made certain statements which were quoted in the decision of the trial court. Among the features in the bill, H. R. 7250, *supra*, which in the succeeding Congress were enacted in the 1897 tariff act was an amendment to section 7 of the 1890 Customs Administrative Act. We have no copy of the bill, but the tenor of the debate indicates clearly that it contained (with the possible exception of the expression relating to "manifest clerical error") the language subsequently appearing in the 1897 tariff act (section 32), changing section 7 of the 1890 administrative act so that, after providing for additional duties, it read, in part:

Such additional duties shall not be construed to be penal, and shall not be remitted, nor payment thereof in any way avoided, except in cases arising from a manifest clerical error, nor shall they be refunded in case of exportation of the merchandise, or on any other account, nor shall they be subject to the benefit of drawback * * *.

Respecting the subject-matter just quoted, Mr. Payne, among other things, said:

The amendments to section 7 are those to which I have already alluded in regard to making the additional duty 1 percent for every 1 percent of increased value. Now, we have made this an additional duty, not a penalty, and we have prescribed in the law that neither the Secretary of the Treasury nor anyone else shall have the power to remit this additional duty. We believe that when a penalty is put into the law or a remedy is inserted the only way to induce a strict observance of the law is to make the penalty or the remedy certain of enforcement. If someone has power to remit it, it will be usually remitted, and the importer will undervalue, with the idea that in the end he will get the additional duty remitted. So we have provided that this additional duty shall not be remitted under any circumstances. * * *

We do not find in the reports of the committees of Congress, nor in the debates upon the bill which became the 1897 tariff act, any discussion of the subject-matter of the foregoing, but inasmuch as the language carried therein was evidently similar to that explained by Mr. Payne, what he said in the Fifty-fourth Congress is recited merely as history relative to the legislation.

In the 1909 tariff act, section 7 thereof continued substantially the same language as that above quoted from the 1897 act, and substantially the same language was continued in the 1913 tariff act. So, under those acts no provision was made for the remission of the additional duties accruing because of undervaluation in any case except one in which there was "manifest clerical error."

During all that period there were in effect sections 2971 and 2977 of the Revised Statutes, as amended in 1878, reading:

SEC. 2971. All merchandise which may be deposited in public store or bonded warehouse may be withdrawn by the owner for exportation to foreign countries; or may be transshipped to any port of the Pacific or western coast of the United States at any time before the expiration of three years from the date of original importation; such goods on arrival at a Pacific or western port to be subject to the same rules and regulations as if originally imported there. Any goods remaining in public store or bonded warehouse beyond three years shall be regarded as abandoned to the Government, and sold under such regulations as the Secretary of the Treasury may prescribe, and the proceeds paid into the Treasury. In computing this period of three years, if such exportation or transshipment of any merchandise shall, either for the whole or any part of the term of three years, have been prevented by reason of any order of the President, the time during which such exportation or transshipment of such merchandise shall have been so prevented shall be excluded from the computation. *Merchandise withdrawn for exportation shall be subject only to the payment of such storage and charges as may be due thereon.* [Italics ours.]

SEC. 2977. Merchandise upon which duties have been paid may remain in warehouse in custody of the officers of the customs at the expense and risk of the owners of such merchandise, and if exported directly from such custody to a foreign country within three years, shall be entitled to return duties. But proper evidence of such merchandise having been landed abroad shall be furnished to the collector by the importer, and one per centum of the duties shall be retained by the Government.

The several tariff acts (1897, 1909, and 1913) also carried provisions for drawback unnecessary to be set forth in detail here.

From the foregoing sections of the Revised Statutes it is observable that where goods upon which duties had not been paid were withdrawn from warehouse and exported it was not required that duties should be paid thereon and, in cases where the duties had been paid, the owners were entitled to a return thereof, and this seemingly would have included the additional duties which it was said, in the acts recited, should not be regarded as penal, had it not been for the provisions to the effect that those particular duties should not be remitted or refunded in cases of exportation.

Congress doubtless was seeking by the legislation primarily to avoid the effects of fraudulent undervaluation by dishonest importers, and to that end adopted a sweeping policy which, during the life of the acts of 1897, 1909, and 1913, applied to all importers, the honest as well as the dishonest. That this worked hardships in many instances was generally recognized. The brief on behalf of petitioner in the case at bar directs attention to a report made by the United States Tariff Commission, in 1918, upon the revision of the customs administrative laws, a subject then receiving attention by congressional committees, wherein it was said, *inter alia:*

*Undervaluation.*—The greatest cause of dissatisfaction in the administration of the customs laws as they now stand is the provision imposing additional duties in cases of undervaluation. These duties, under existing law, accrue whenever merchandise is entered by the importer at a value less than that finally fixed by the appraiser. They are applied automatically, and without regard to any evidence of the importer's guilt or innocence, at the rate of 1 per cent of the total appraised value for each 1 per cent that such appraised value exceeds the value declared in the entry. (See sec. 90.) Under existing statutes, the only relief that can be granted, whatever the reason for the entry of an importation at less than the value found by the appraiser to be the true market value, is for "manifest clerical errors." That term has been judicially interpreted to include such errors only as are apparent upon the face of the entry papers. Many innocent errors, however, are not of a clerical nature. They are commonly due to oversight in transferring items from the invoice to the entry or to ignorance concerning fluctuations in market value between the time of purchase and the date of exportation. Under the law as it has been and is, every importer is required to state in his entry the foreign market value at the time of exportation. Importers of merchandise obtained by purchase frequently know little or nothing about the foreign market value other than the price paid by themselves for the goods. Hardships frequently result against which the importer finds it difficult to guard.

  \*   \*   \*   \*   \*   \*   \*

The need of some amendment to remedy such conditions has long been universally recognized; the only doubt has been how far the amendment should go. One suggestion has been to abolish the additional duties altogether, leaving importers guilty of actual fraud to be punished according to the statutory provisions for such cases—by fine or imprisonment, or loss of their merchandise or its value. The view of the majority of those consulted is that the provision for additional duties should be retained, because of its deterrent effect on slack and fraudulent importers, but should be modified so as to permit relief in all cases of proved good faith. This method has been adopted in the draft, which provides in effect that, on a finding by the Secretary of the Treasury that the undervaluation of merchandise on entry, shown by the final appraisement, was without intent to defraud the revenue, or to conceal or misrepresent facts, or to deceive the appraiser, the additional duties may be remitted or mitigated. (See sec. 90.)

The brief after quoting the above then said:

Although the proposed "sec. 90" underwent several changes in text before the final passage of the Tariff Act of 1922, the recommendation that the severity of the additional duties feature of the law be mollified was followed in the enactment of that act. The modification—the relaxing—of the severe provisions, which had

their origin in the 1897 act, was to benefit the *innocent* importer—the one who, affirmatively, could show his good faith. The unscrupulous importer still had to be considered, hence the necessary retention of the provision designed to prevent the use of the warehousing and drawback provisions as devices to circumvent the intended consequences of intentional undervaluation. The anomaly of the trial court's opinion herein is that it construes a provision of law, expressly remedial and in mitigation of former severity, enacted in 1922, as being *in pari materia* with a provision, enacted in 1897, which was avowedly unremitting "under any circumstances."

No reason has been advanced, and it is doubtful if one can be conceived, why an importer who innocently, in good faith, undervalues his goods, upon making entry, should be left upon a parity with the unscrupulous importer when it comes to exporting goods from warehouse. Such could not have been the legislative intent in the enactment of the provision for the remission of additional duties; such is the effect of the opinion and holding below.

Two of the changes in law respecting the remission of additional duties made in the Tariff Act of 1922 were (1) the provision for an *order* by the Secretary of the Treasury in cases of clerical error, and (2) a *finding* by the Board of General Appraisers, both expressed in section 489, *supra*. The first change obviously was merely one of detail to clarify administrative practice and is of no importance in the instant case. The latter marked a wide departure from the rigid provisions of prior acts, and placed in the law a provision for judicial review. Notwithstanding this provision, however, the act, as has been stated, retained the clause which inhibited the refund of the additional duties in cases of exportation, and the decision of the trial court in the instant case, as heretofore said, points out that this provision was transposed in the 1922 act to a different position from that which it occupied in the prior acts.

As a matter of fact, this so-called transposition seems to have come about by the insertion of certain new provisions among which was the language:

Upon the making of such order [that is the order by the Secretary of the Treasury in cases of clerical error] or finding [that is the finding by the board; later the court], the additional duties shall be remitted or refunded, wholly or in part, and the entry shall be liquidated or reliquidated accordingly. * * *

The inhibition against the refund of the additional duties follows immediately after this in the same paragraph and, as we understand the view of the trial court, it is that it has the effect of nullifying the first part of the paragraph so far as the additional duties are concerned.

It may be conceded that there is a seeming conflict in the provisions, and, upon the surface, the arrangement of the parts adds somewhat to the difficulty of construing the section. As an aid in its construction, we deem it proper here to insert pertinent parts of the section as it read when it passed the House, and as it passed the Senate. For convenience, these are placed in parallel columns, the

insertions of the Senate being indicated by italics, and lines drawn through certain words which the Senate struck out:

*House*

Such additional duties shall not be remitted nor payment thereof in any way avoided, except upon the order of the Secretary of the Treasury, or upon the finding of the Board of General Appraisers that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

Upon the making of such order or finding, the additional duties shall be remitted or refunded, wholly or in part, and the entry shall be liquidated or reliquidated accordingly. Such additional duties shall not be refunded in case of the exportation of the merchandise, nor shall they be subject to the benefit of drawback, except as above prescribed.

*Senate*

Such additional duties *shall not be construed to be penal* and shall not be remitted nor payment thereof in any way avoided, *except in the case of a manifest clerical error*, upon the order of the Secretary of the Treasury, or *in any case* upon the finding of the Board of General Appraisers *upon a petition filed and supported by satisfactory evidence under such rules as the board may prescribe*, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. *If the appraised value of any merchandise exceeds the value declared in the entry by more than 100 per centum, such entry shall be presumptively fraudulent, and the collector shall seize such merchandise and proceed as in the case of forfeiture for violation of the customs laws; and in any legal proceeding other than a criminal prosecution that may result from such seizure, the undervaluation as shown by the appraisal shall be presumptive evidence of fraud, and the burden of proof shall be on the claimant to rebut the same, and forfeiture shall be adjudged unless he rebuts such presumption of fraud by sufficient evidence.*

Upon the making of such order or finding, the additional duties shall be remitted or refunded, wholly or in part, and the entry shall be liquidated or reliquidated accordingly. Such additional duties shall not be refunded in case of exportation of the merchandise, nor shall they be subject to the benefit of drawback, ~~except as above prescribed~~.

From a reading of the House provision it will be observed that by the use of the last phrase "except as above prescribed," it seemingly was made quite clear that the additional duties provided in the section were to be remitted or refunded along with the regular duties upon (1) the order of the Secretary of the Treasury (whose discretion was not there limited to cases of clerical error) or (2) upon a finding of the board made under the provisions of the section. In the Senate, however, the discretion lodged in the Secretary was limited to cases

of "manifest clerical error" and the last clause, "except as above pre-
scribed," was stricken out, while, in connection with the provision for
a court finding, there was inserted the broad phrase "in any case."

The Government takes the position that the phrase "in any case"
was inserted in lieu of the stricken phrase, "except as above pre-
scribed."

The brief says:

It will be noted that the Senate deleted the words "except as above prescribed"
in the last sentence of the above quotation, and, *in lieu thereof*, inserted the words
"in any case" in the clause of the preceding paragraph relating to the jurisdiction
of the Board of General Appraisers in petitions for remission of such additional
duties.

It will also be noted that between the sentence prescribing the new remedy by
petition and the later sentence prohibiting refund by the collector upon mere
exportation of the merchandise, the Senate inserted an *additional provision*,
relating to procedure in cases of presumptively fraudulent undervaluations amount-
ing to more than 100 per centum. If the words "except as above prescribed" had
been permitted to remain at the end of the last sentence of the above quotation,
they would have related to the Senate's new insertion regarding presumptively
fraudulent entries, as well as to instances where the Secretary of the Treasury or
Board of General Appraisers ordered remission, as provided in the Bill when
originally passed by the House.

It thus becomes obvious that, in order to avoid any such ambiguity, and to
leave no doubt as to the broad powers given the Board of General Appraisers in
the newly created remedy by petition, the Senate, upon striking out the words
"except as above prescribed," was careful to insert the words "in any case" in the
preceding paragraph relating to petition proceedings.

The Government contends that the above quoted excerpt from Section 489,
Tariff Act of 1922 (reenacted in Section 489, Tariff Act of 1930), directs the col-
lector to *liquidate* or *reliquidate* in *accordance* with the *finding* of the Board of
General Appraisers (or the Customs Court), upon determination of a petition for
remission filed "in any case"; and that the Congress did not intend to modify the
jurisdiction of the Board (or Court) by also re-enacting the previously existing
provision that:

Such additional duties shall not be refunded in case of exportation of the mer-
chandise, nor shall they be subject to the benefit of drawback.

The latter provision has appeared in every Tariff Act since the Act of 1897,
where it first appeared in Section 32, amending Section 7 of the Tariff Act of
1890. * * * During the entire period since its original enactment in 1897,
this provision has been merely an *exception* to the *collector's* general authority to
*refund* duties and other charges accruing on imported goods in bonded warehouses,
upon the withdrawal and *exportation* thereof, as provided in Section 21, Act of
1862, R. S. 2971 and 2977 and Sections 556 and 557, Tariff Acts of 1922 and
1930 * * *.

No rule is more firmly established than that statutes should be construed so as
to give effect to *all* provisions. *Beals* v. *Hale*, 45 U. S. 36 (4 How. 37); 11 L. ed.
865; *Pollard* v. *Bailey*, 87 U. S. (20 Wall) 520, 525; 22 L. ed. 376; *United States* v.
*Boisdore*, 49 U. S. (8 How.) 113, 121; 12 L. ed. 1009; *Costanzo* v. *Tillinghast*, 287
U. S. 341, 345; 77 L. ed. 350; *Alexander* v. *Cosden etc. Co.*, 290 U. S. 484, 496; 78
L. ed. 452.

In the course of the trial below, testimony was presented by a
witness, called by counsel for the Government, relative to administra-

tive practice, which is epitomized in the Government's brief before us as follows:

The Government's witness, Mr. Berge, a liquidator at the New York Custom-house for 18 years, stated he had worked on the "Allendorf draft of the Tariff Act of 1922, transferring the remission of additional duties in such cases as this to the Customs Court" * * *. He was shown to be thoroughly familiar with the long-continued administrative interpretation of and practice under the aforesaid statutes, and described that practice as follows:

Additional duties accruing under Section 489 have been refunded by the collector in *all* cases where there has been a Customs Court *order* to remit same, including instances where the goods had been exported from the country, but in the absence of any such order from the court, the additional duties have been collected notwithstanding exportation of the goods. With respect to certain other forms of penalties, such as additional duties for failure to mark goods, etc., accruing under statutory provisions other than Section 489, it has been the practice for the collector to refund same upon the *mere act of exportation alone*, but additional duties for undervaluation have been an *exception* to that rule, and the "only duties that were not remitted on liquidation on exportation of the merchandise" * * *.

The witness examined the entry in the case at bar and stated it had not yet been liquidated. He was then informed by counsel that all the merchandise thereon had been exported from the country, and was asked how, under the existing customs administrative practice, the entry should be liquidated. His reply was that by reason of the exportation of the goods, *no regular duties* would be assessed, but the "only duties that would accrue thereon would be additional duties for undervaluation" * * *. He repeated, however, that if the collector received an order from the Customs Court, granting a petition for remission, the "additional duties would be remitted without regard to whether the merchandise was exported or not" * * *. The witness added that he knows of no exceptions to the administrative practice as so described by him, and that to his knowledge the correctness thereof had never been questioned before * * *.

It seems quite evident to us, from the legislative history recited, that the Congress, in the 1897, 1909, and 1913 tariff acts, intended to meet the condition created by court decisions respecting the penal character of additional duties, and, therefore, exercised the authority which the Supreme Court in the *Helwig* case, *supra*, declared it might exercise, to declare that they should not be regarded as in the nature of a penalty, and in that connection intended also to guard against their remission or refund, no matter what the intent of the importer was in making undervaluation.

We think it equally clear that in the later acts of 1922 and 1930, the Congress intended to modify the rigid rule of those prior acts and provide, in cases of exportation of merchandise, as well as in cases where there is no exportation, for remission, or refund of such additional duties in instances (1) where clerical error appears in their levy and (2) in cases where it is judicially found that the acts of undervaluation, because of which acts they accrue, are "without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise." The phrase "in any case" is certainly broad

enough to include cases in which the merchandise is exported, and the allowance of remission or refund of additional duties in cases of exportation where no regular duties are collected is not inconsistent with the policy of allowing such remission or refund in cases of nonexportation. Indeed, all things considered, there would seem to be as strong, if not stronger, reason for allowing these in cases where the goods do not, in fact, enter into domestic commerce, than in cases where they come into competition with domestic articles. The provision prohibiting refund in cases of exportation, of course, is in effect where the importer fails to present the required evidence of good faith as defined by the statute.

So, under our construction there is ample room for the application of all the provisions of section 489 of the respective acts. Under the construction of the trial court there is no opportunity of applying any provision, in cases of exportation, save the prohibitive one. Under its construction it might well be questioned whether there could be a remission or refund even in cases of manifest clerical error when the error was incident to the additional duties.

For the reasons indicated, we are unable to agree with the trial court's construction of the statute and its decision in that regard is *reversed*.

There remains to be considered the procedure which should follow our decision.

In those cases arising under section 489, *supra*, where the authority of the court is invoked, in order that there may be a refund in instances where the additional duties have been paid, or a remission where, as in the instant case, the duties have accrued but have not been paid, there must be a finding by the court that the undervaluation was without any intention to defraud the revenue or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. Each of these elements must be established by satisfactory evidence. When such finding is certified to the collector he refunds or remits the duties in conformity with the finding and liquidates or reliquidates the entry. It is peculiarly the function and duty of the trial court to make the finding, and such finding is final in the absence of an appeal. It is our view that good practice would be served best by the court stating its finding, whether affirmative or negative, substantially in the terms of the statute. That constitutes the real judicial judgment in the case. In strictness the court does not adjudge refund or remission but adjudges facts upon which the collectors of customs base their subsequent acts.[2] *United States* v. *Fish*, 268 U. S. 607.

[2] It is deemed not amiss to direct the attention of the members of the bar to the views here expressed, to the end that petitions for remission may be framed in clear and simple form, thus simplifying the task of the court. It has been noted in the past that some of the petitions of this nature were carelessly framed.

While we think it inferable from what was said in its decision that the trial court entertained no doubt of the good faith of the importer in this case (and upon the record we entertain none), it did not (evidently deeming it unnecessary under its view of the proper construction of the statute) make a finding which is sufficiently specific to enable final disposition of the case by simply reversing. Consequently, it is deemed proper to *remand* the case with instructions that a specific finding be made and certified to the collector to the end that liquidation of the entry may be had. It is so *ordered*.