**G. B. R. SMITH MILLING CO. v. THOMAS, Collector of Internal Revenue, et al., and thirty other cases.**

Nos. 3580—836, 3583—839, 3584—840, 3585—841, 3586—842, 3588—844, 3598—845, 3590—846, 3591—847, 3592—848, 3593—849, 3594—850, 3595—851, 3596—852, 3597—853, 3590—854, 3600—856, 3601—857, 3603—859, 3604—860, 3605—861, 3606—862, 3607—863, 3609—865, 3610—866, 3613—869, 3614—870, 3615—871, 3617—873, 3621—877, 3620—876.

District Court, N. D. Texas, Dallas Division. Sept. 20, 1935.

Head, Dillard, Maxey-Freeman & McReynolds, of Sherman, Tex., and W. H. Oppenheimer, of St. Paul, Minn., for complainant G. B. R. Smith Milling Co.

Bullington, Humphrey & King, of Wichita Falls, Tex., for complainants Kell Mill & Elevator Co., International Milling Corporation, Great West Mill & Elevator Co., Wichita Mill & Elevator Co., and Harvest Queen Mill & Elevator Co.

McCormick, Bromberg, Leftwich & Carrington, of Dallas, Tex., for complainants Burrus Mill & Elevator Co. of Oklahoma, Morten Milling Co., Fant Milling Co., and Collin County Mill & Elevator Co.

John C. Robertson, of Dallas, Tex., for complainant Stanard Tilton Milling Co.

Coke & Coke and Julian B. Mastin, all of Dallas, Tex., for complainant Universal Mills.

Cantey, Hanger & McMahon, of Fort Worth, Tex., for complainants Bewley Mills, Dublin Mills, Inc., and Worth Mills.

Chas. Kassel, of Fort Worth, Tex., for complainants Kembell Diamond Milling Co. and Graham Mill & Elevator Co.

Bryan, Stone, Wade & Agerton, of Fort Worth, Tex., for complainant Bain Peanut Co. of Texas.

Kimbrough & Boyce, of Amarillo, Tex., for complainant Pinkney Packing Co.

Jos. W. Bailey, Jr., of Dallas, Tex., for complainant Denison Cotton Mill Co.

Read, Lowrance & Bates, of Dallas, Tex., for complainant Bonham Cotton Mills.

Moore & Moore, of Paris, Tex., for complainant Paris Milling Co.

W. O. Davis, of Gainesville, Tex., for complainant Whaley Mill & Elevator Co.

Eugene T. Adair, of Fort Worth, Tex., for complainant Alliance Milling Co.

Samuels, Foster, Brown & McGee, of Fort Worth, Tex., for complainant Austin Mill & Grain Co.

Turner, Rodgers & Winn, of Dallas, Tex., for complainant Neuhoff Brothers Packers, Inc.

O. H. Woodrow, of Sherman, Tex., for complainant Corsicana Cotton Mills.

James F. Wright, of Throckmorton, Tex., for. complainant Throckmorton Mill & Elevator Co.

Lambdin & Russell, of Amarillo, Tex., for complainants Lemons-Thompson Co. and Tulia Milling Co.

Clyde O. Eastus, U. S. Atty., of Dallas, Tex., Frank B. Potter, Asst. U. S. Atty., of Fort Worth, Tex., John Erhard, Asst. U. S. Atty., of Dallas, Tex., and James E. Murphy, Asst. to Atty. Gen., for respondents.

ATWELL, District Judge.

These motions that have been presented in argument during the last day or so revolve around and relate to the thirty-one equity cases shown above.

I think it was in the latter part of June of the present year, just prior to the time of the completion of the year's work by this court, that cause No. 3580—836 was presented and argued for a preliminary restraining order, pending the ripening of the cause under the equity rules.

At that time there was pending in the Congress an act which, if it became a statute, would make permanent an unlawful confiscation of the citizen's property.

It was so unusual to hear that the government would take from a citizen that which it might not have a right to take, and then provide that the citizen should not recover it, even if it were illegally taken, that the chancellor was given no road save and except to stop the hand of the government agents. Commensurate bond was given to hold the government harmless if and when it should develop that the restraint had been improvidently granted. No one knows better than this court the gravity of staying the sovereignty in its effort to secure funds to run its affairs. That gravity has not only been indicated by numberless wise observations by. the courts, but it has been indicated from time to time by legislative cautions, so that no judge, who is careful in the performance of his duties, would think of doing the thing which would keep revenue from the government.

Along about the first of July following that temporary restraining order, the court, having completed his labors, there being nothing further to do, went on his vacation, and during his absence some of the other judges, who were acting, granted other temporary restraining orders for citizens similarly situated in this district, making them all returnable on the date that the court had fixed for the government, and the complainant, in 3580—836, to try, on the merits, so important a case. It being thought, at that time, by both the court and counsel that everybody would have returned from their vacations and ample time would have passed in which·to assemble the necessary proof so that a case of such vast import could be tried and determined and be on its way to the higher court, if either side should think itself wronged by the decree that might be entered.

On the 19th of September the government had filed a renewal of its motion to dismiss 3580—836 and to dissolve the restraining order that had been issued thereon, and also had filed similar motions in each of the other thirty cases. By agreement of very sensible and fine-thinking lawyers, all of the matters that have been presented in this hearing revolve around those two motions in each case.

Since the granting of the temporary restraining order, in June, the Congress denied the attempted confiscation, and has passed, and the President has approved, an amendment to the Agricultural Adjustment Act (7 USCA § 623), which shows evidences of that fineness that has al-

ways been exhibited in our national legislative body with reference to the care of the citizen; and, after all, that is what government is for.

This amendment seeks to give the taxpayer who may think himself wronged an opportunity to ask for a refund of that which he thinks has been illegally exacted, before the Commissioner of Internal Revenue. But it does not stop by merely giving such a remedy in so many wholesome words. It proceeds to define what that hearing shall include, and the result thereof. It may be that the "road to salvation is narrow," but, likewise, it is well marked and there is no doubt about it; but if this "remedy" is well marked and beyond doubt, the court has been unable to discover it. It is clouded in a number of words and phrases, and impediments, and I think one would be rather bold to call it a "plain, adequate, complete remedy."

The more carefully one reads this direction to the taxpayer who is seeking light as to how he may recover what he thinks he should not have paid, the more unenlightened one becomes. It provides that: "No recovery * * * shall be * * * allowed * * * unless, after a claim has been duly filed, it shall be established, in addition to all other facts required to be established, to the satisfaction of the Commissioner of Internal Revenue, and the Commissioner shall find and declare of record * * * that neither the claimant nor any person directly or indirectly under his control or having control over him, has, directly or indirectly, included such amount in the price of the article with respect to which it was imposed or of any article processed from the commodity with respect to which it was imposed, or passed on any part of such amount to the vendee or to any other person in any manner, or included any part of such amount in the charge or fee for processing, and that the price paid by the claimant or such person was not reduced by any part of such amount." Section 21 (d) (1), 7 USCA § 623 (d) (1).

Does the miller buy wheat from the farmer and have in his mind at the time of the purchase the fact that he (the miller) must pay the processing tax? If he does have that fact in his mind, the probability is that the price he offers will be to some extent lowered. Can one say, surely, that such a consideration would not have a definite place in a finding by the commissioner? Is it unworthy of consideration to believe that the miller, after having made flour and other articles from wheat, and after having paid the process tax, will not allow such payments to enter into the prices that he makes and receives for the finished product? Can one definitely say that one's profits and losses are to make up a certain answer as to whether, "directly or indirectly," this tax has been "passed back," or "passed on"? As one reads and thinks, the dilemma increases.

Again, when the taxpayer goes into court there is to confront him the transcript of the hearing before the commissioner, which shall be "filed as the record in the case and shall be so considered by the court." Can any lover of the law find due process in limitations of that sort, if the limitations are really followed? Further along in the act are other provisions with reference to the hearing before the commissioner.

We are talking now, of course, about a tax about which there is a great deal of doubt as to whether it is legal. We are talking about something that may be no tax at all. It may be a bounty. It may be something that is taken from one and given to another. It may be something that does not come at all within the power of the Congress to fix or to exact—I say, it may be. It may be an exaction that is wholly committed to the forty-eight states and with which the national government has no concern. Whether it is or not this court does not say, nor find, at this time. But it, at any rate, is the imposition of a burden that has the earmarks about it which challenge the student, the thoughtful man, which challenges the court, and about which and under which the citizen is impatient; he feels that he is burdened unconstitutionally and unjustly and he resents it and he wants to fight it, and he wants to put the money in court and go to "legal process" for a determination of whether he is right or his government is right. There is no finer example of the American method of determining things—the lawful way in the courts of the land—and by public trials. Not in some new fangled manner, but the open way, such as we all recognize as, "due process of law."

I doubt very seriously that a court would sit in the trial of a case and allow itself to be governed solely by a record made somewhere else and not add to it, yet that may be the procedure demanded in this amendment.

As I said, during argument, we do have suits where a transcript of the proceedings before an executive department may be filed in the court which finally hears the controversy and it has certain probative force and weight, but it is never free from attack; nor from being overcome by other evidence, or other witnesses, that may be offered at the trial by the respective litigants. In other words, we cannot have a trial any way, except the orderly, legal way that is known as the American way in an American court.

Then, too, under this section it is quite possible—not to say probable, and which the court does not decide—that the return of the money, if improperly taken from the taxpayer, might be dependent upon what the taxpayer, as the buyer of the wheat, might have paid for the wheat which he purchased from the producer. That thought was not considered in U. S. v. Jefferson Electric Mfg. Co., 291 U. S. 386, 389, 54 S. Ct. 443, 78 L. Ed. 859, nor was that an equity case. It is wholly dissimilar to this case. Whether the miller put this additional tax upon the man who makes the biscuits out of the flour which the miller makes out of the wheat which he buys from the farmer is manifestly included in the wording and in the determination which the commissioner must make. We ought not to be permitted to speculate as to what sort of a proceeding the taxpayer may take in so far as rules that shall govern are concerned. He ought to have an open right to come in and question; his hands should not be tied; that is the way it appears to the court.

 So I have reached the conclusion that this amended act does not give the taxpayer such a legal remedy as precludes him from coming into a court of equity as has been done here. Union Pac. R. Co. v. Board of County Commissioners, 247 U. S. 282, 38 S. Ct. 510, 62 L. Ed. 1110; Dawson v. Kentucky Distilleries & Warehouse Co., 255 U. S. 288, 41 S. Ct. 272, 65 L. Ed. 638; Oklahoma Operating Co. v. Love, 252 U. S. 331, 40 S. Ct. 338, 64 L. Ed. 596.

 Now I think it would be appropriate, and I believe it is called for here, as no one is more jealous of a stare decisis and an orderly procedure in our courts of justice than the bar and the bench, to say that the trial court is controlled by the decisions of the higher court; that is, the court which is immediately over the trial judge.

The Circuit Court of Appeals for the Fifth Circuit is, in the first instance, not only the mentor, but the orderer, of this court.

 In a case that goes up from another district in this same circuit to the Circuit Court of Appeals, an opinion thereon would be tremendously compelling to this court. A judgment of the Circuit Court of Appeals in a case which passes from this court to that court binds this court. But I do not find in the record here such an action by that court with reference to this statute as appears to be either controlling or persuasive, for the reason that the memorandum order which has been introduced here shows merely that the justices advised that pending appeal of that particular case they did not see fit to interfere with the judgment of the trial judge in the matter of refusing an injunction; merely adding that it appeared that the complainant in that particular case had a plain, adequate, and complete remedy at law.

Orders may be drawn overruling both motions, and continuing the injunctions in each of the thirty-one cases.