## PINKNEY PACKING CO. v. THOMAS, Collector of Internal Revenue.
### No. 3734—990.

District Court, N. D. Texas, Dallas Division.
Dec. 26, 1936.

Kimbrough & Boyce, of Amarillo, Tex., for complainant.

Clyde O. Eastus, U. S. Atty., John A. Erhard, Asst. U. S. Atty., and James L. Backstrom, Sp. Atty., Bureau of Internal Revenue, all of Dallas, Tex., for respondent.

ATWELL, District Judge.

The complainant is engaged in the business of buying and slaughtering cattle and hogs, manufacturing, packing, and selling products derived therefrom. W. A. Thomas is the internal revenue collector for the Second District of Texas.

The complainant alleges that it was one of the successful litigants in attacking the Agricultural Adjustment Act (48 Stat. 31). In that litigation it had deposited, under the orders of the court, with the clerk $12,574.80 as security for AAA taxes for the months of May, to November, 1935, inclusive, in the event it was cast. This amount, less the statutory commission to the clerk, and less other expense items, which are detailed, was returned to it when that act was declared to be unconstitutional. That the act which Congress passed on June 22, 1936, Revenue Act 1936, § 501 et seq., 49 Stat. 1734 (26 U.S.C.A. § 345 et seq.), is an effort to recapture that illegal tax.

It alleges that approximately 50 per cent. of its sales consist of beef products and 50 per cent. of hog products, but that the exact proportion is incapable of deter-

mination. That this is especially true with reference to the period of time during which the processing taxes which it did not pay were levied. That thirty or forty products contain both beef and pork in which the ingredients are used in varying proportions, and that it has no record by which it can determine how much of each went into the manufactured product. Likewise, there is no means of determining what proportion of beef product and what proportion of hog product went into the manufacture of soap grease, tankage, and other products made from the inedible portions of beef and hogs. That it is wholly impossible for it to determine what portion of its gross income was derived solely from the sale of hog products and the sale of beef products. That it cannot make a return showing such figures as are required by the regulations of the Commissioner of Internal Revenue. That there is no way of accurately determining the allocable part of the expenses and that any such attempt would be based upon conjecture and estimate. That such failure and confusion is not due to its failure to keep adequate books and records, but is peculiar to all similarly situated, and that it could not anticipate the unreasonable and capricious extent to which the Congress would require its records to be kept in order to meet the requirements of the act.

That it paid the processing taxes for the year 1935, up to the month of May, but it made no charges, nor did it take any credit for taxes, but at all times purchased hogs and hog products and sold the same on the open market at competitive prices. That it made no contracts in which there was a stipulation with reference to processing taxes. That it merely purchased and sold, in order to net it a reasonable profit, but that its buying and sale prices were at all times subject to market conditions. That its margin of profit was probably sufficient to cover the processing tax in some instances, and insufficient at other times, "and that it is impossible to determine to what extent complainant recovered such processing taxes in its margin of profit." That after May 1, 1935, processing taxes were paid upon a large quantity of products sold by it, though the amount cannot be determined, and a large quantity of such products were sold by it after the AAA had been declared invalid, though there is no way to determine such amount. That during the year 1935, and until January 6, 1936, it manufactured more than an hundred different products from hogs, processed by it. That it cannot trace the products from each hog killed, to the sale thereof, and cannot determine from the records which of its products were tax paid and which were not. That this is the result of the nature of its business, and that interminable records and calculations would be required to trace such sales, and in no event would it be accurate. That its margin of profit varied from time to time and no particular sale could be used as a basis for determining its "margin of profit." That its profits or losses can be determined only from its operating costs and gross sales over a substantial period, and then only for its business as a whole. That any attempt to say that any particular part of the price received by it for any one or all of its products from January 1, 1935, to January 1, 1936, represented any part of the unpaid processing tax, would be purely arbitrary and capricious.

That it cannot prepare the return required by the Commissioner. That it has attempted, without admitting the validity of the tax, to file a return as required by the law, but that the same is not complete, because there is no way to determine the facts required in the return, to comply with the act complained of.

That the tax is put upon an alleged net income which is to represent the extent that the tax was shifted, but that the wording of the law as to the shifted tax is limited by the further provision that the extent to which it was shifted shall not be held greater than the net income derived from the sale of products on which the tax was paid. It claims that it has no legal remedy because it is apparent "that it is the intention of Congress with reference to the processing taxes, although declared void, to collect and retain the same, regardless of the illegality." That, even though plaintiffs should procure a judgment authorizing a recovery of the same, "the payment would depend entirely upon appropriations made by the Congress, and that the Congress has not made, and complainant alleges, on information and belief, substantiated by the action of Congress, with reference to such processing taxes, up to the present time, that Congress will not make an appropriation from which refunds could be made; that although complainant long ago filed a claim

for refund of approximately forty-five thousand dollars processing taxes, paid by it, no such refund has yet been allowed, and even if such claim is allowed, it is manifest that Congress will not make appropriations to pay same, although complainant is legally entitled to such refund. It should not be required to pay additional sums on account of such processing taxes, at least until proper refund has been made to it of such processing taxes so paid by it."

It alleges that it is able and willing, and offers to deposit, in escrow, pending final determination of the suit, such amount of cash as the court may deem proper, as security for the payment of any taxes which may be assessed against it under this act. That, pending a hearing, a temporary restraining order be granted, a preliminary injunction follow, and that upon final hearing "the tax be declared illegal and unconstitutional and that the injunctions be made permanent."

Upon presentment of the bill on December 11, 1936, a rule issued requiring the respondent to show cause on December 19, why a restraining order should not be granted. On December 17, the respondent filed a motion to dismiss, suggesting the lack of jurisdiction and maintaining that the bill does not entitle the complainant to the relief for which it prays.

The statute under scrutiny is section 345 of 26 U.S.C.A., Revenue Act 1936, § 501, 49 Stat. 1734:

"(a) The following taxes shall be levied, collected, and paid for each taxable year (in addition to any other tax on net income), upon the net income of every person which arises from the sources specified below:

"(1) A tax equal to 80 per centum of that portion of the net income from the sale of articles with respect to which a Federal excise tax was imposed on such person but not paid which is attributable to shifting to others to any extent the burden of such Federal excise tax and which does not exceed such person's net income for the entire taxable year from the sale of articles with respect to which such Federal excise tax was imposed.

"(2) A tax equal to 80 per centum of the net income from reimbursement received by such person from his vendors of amounts representing Federal excise-tax burdens included in prices paid by such person to such vendors, to the extent that such net income does not exceed the amount of such Federal excise-tax burden which such person in turn shifted to his vendees."

Subdivision (3) of subsection (a), 26 U.S.C.A. § 345 (a) (3) refers to refunds, not here pertinent.

It has already been noticed by the careful reader that subdivision (1), 26 U.S.C.A. § 345 (a) (1), levies the tax upon the person who has not paid it, but who has shifted it "to others to any extent" provided such levied tax does not exceed such person's net income for the entire taxable year from the sale of articles with respect to which such tax was imposed.

Subdivision (2), 26 U.S.C.A. § 345 (a) (2) makes the 80 per cent. tax dependent upon reimbursements received by the taxpayer from his vendors, to the extent that such net income does not exceed the tax burden which such taxpayer shifted to his vendees.

The lengthy provisions of succeeding paragraphs of the act are devoted to methods which shall be followed by the taxing authorities in arriving at the amount due under these classifications. Finally, in subsection (e), 26 U.S.C.A. § 345 (e), is the statement that "the extent to which the taxpayer shifted to others the burden of a Federal excise tax shall be presumed to be an amount computed as follows." In these provisions the word "margin" is used which is defined to be the difference between the selling price of articles and the cost thereof. The method of reaching this interesting "margin" is rather complicated and depends upon a defined "cost" price, and a defined "selling price," and an allocation of certain specified expenditures, including professional fees and costs of litigation.

Subsection (i) 26 U.S.C.A. § 345 (i), interests us with the statement that "either the taxpayer or the Commissioner may rebut the presumption established by subsection (e)." Such rebuttal may consist of proof of the actual extent to which the taxpayer shifted to others the burden of the tax. Two paragraphs of the sort of proof to accomplish such rebuttal are exhibited.

Subdivision (2) of subsection (j), 26 U.S.C.A. § 345 (j) (2), fixes the date of the determination of the tax, as that day upon which the tax was held invalid by the Supreme Court. The last paragraph, subsection (l), 26 U.S.C.A. § 345 (l), mentions a potential invalidity. Sections 345a, 345b,

and 345e, 26 U.S.C.A. (Revenue Act 1936, §§ 502, 503, 506), give the taxpayer all of the remedies for the recovery of a tax paid under protest and for refund, and in addition closes the gate against court supervision of any settlement that is made by any taxpayer and the Commissioner of Internal Revenue as an adjustment of the liability for this particular tax.

We may concede without argument that the allegations of the complainant, that the law is an attempt to collect what the Supreme Court has held to be illegal, is well taken. The act specifically ties itself to that decision. That decision construed the AAA, which was intended to increase the prices of certain farm products for the farmer, by decreasing the quantity produced, such decrease to be attained by making payments to farmers who reduced their acreage and crops under agreements with the Secretary of Agriculture, the money for which purpose was exacted from those who processed certain commodities, as an invasion of the reserved power of the states, and as an attempt by the national government to regulate and control agricultural production, for which it had no power. United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914.

The determined stand of Congress to require the processor to pay 80 per cent. of that which he had shifted under the void act, is only interesting in so far as it sheds light upon the allegations of the bill that the complainant had paid $45,000 of such illegal taxes and has made an application for the refund thereof which has netted it nothing, and that therefore the refunding provision should not be recognized by the court as affording a legal remedy.

If the taxpayer did shift the tax either to the one from whom it purchased, or to the one to whom it sold, then it would find itself improperly enriched, provided such shifting was in excess of what it paid the government. Having gotten such benefits by a void act, there is no equitable appeal in its desire to retain the same. The Congress could treat that as income. It would have a right to seek that avenue of profit and levy a tax against it the same as it has a right to seek any source of income. Such seeking by the legislative branch of the government would not be a violation of the decision of the Supreme Court. If, however, the Congress fixes such a basis for the recovery of the 80 per cent. of the shifted tax, as is arbitrary and capricious and so nonunderstandable as to confuse and harm the taxpayer, then a court of equity would protect the taxpayer.

It is hardly fair to assume that the government is to be unfair. While it is true that justice is concerned with the present tense, we must view these problems in a practicable manner. The government lasts forever—those who control it constantly change. The atmosphere is different with the passing of the decades. If it be true that a taxpayer has paid $45,000 illegal taxes which have not been refunded upon application, that may not be set up as a reason why equity will ignore legal requirements and, itself, act wrongly.

■ We must assume that the national government is, as it has always proven itself, scrupulously fair with the citizen. Even though years pass before an account is settled, such settlement is as certain as the perpetuity of the government. So, if the act furnishes a legal remedy, then that statute which prohibits suit to restrain the assessment and collection of taxes is operative, even if the act is unconstitutional. State Railroad Tax Cases, 92 U.S. 575, 23 L.Ed. 663; Bailey v. George, 259 U.S. 16, 42 S.Ct. 419, 66 L.Ed. 816; Mellon v. Mertz, 65 App.D.C. 266, 82 F.(2d) 872; Huston v. Iowa Soap Co. (C.C.A.) 85 F. (2d) 649; Snyder v. Marks, 109 U.S. 189, 3 S.Ct. 157, 27 L.Ed. 901.

■ When, under the guise of taxing, Congress attempts to penalize for alleged illegal conduct, the rule ceases, and injunction will lie. Lipke v. Lederer, 259 U.S. 557, 42 S.Ct. 549, 66 L.Ed. 1061; Regal Drug Corporation v. Wardell, 260 U.S. 386, 43 S.Ct. 152, 67 L.Ed. 318. See Helwig v. U. S., 188 U.S. 605, 23 S.Ct. 427, 47 L. Ed. 614, and United States v. Constantine, 296 U.S. 287, 56 S.Ct. 223, 80 L.Ed. 233, as to the size of the tax. When a voluntary payment would bar recovery, restraint may issue. Pollock v. Farmers' Loan & Trust Co., 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759; Brushaber v. Union Pacific R. Co., 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493, L.R.A.1917D, 414, Ann.Cas.1917B, 713; Stanton v. Baltic Mining Co., 240 U.S. 103, 36 S.Ct. 278, 60 L.Ed. 546.

■ There is another exception to the applicability of section 3224, Rev.St. (26 U.S. C.A. § 1543). It arises out of hardship. It is the heart of procedure and is equity.

When the taxpayer is at hazard, and the law pressure is so critical as to endanger his property rights, the chancellor hears and acts. Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422; Hill v. Wallace, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822; Red Star Yeast Co. v. La Budde (C.C.A.) 83 F.(2d) 394; Smith Milling Co. v. Thomas (D.C.) 11 F.Supp. 833; Rickert Rice Mills, Inc., v. Fontenot, 297 U.S. 110, 56 S.Ct. 374, 80 L.Ed. 513; United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914.

 The act seems to be arbitrary and to lack uniformity. Upon careful analysis it may be held unconstitutional. Certainly it presents two classes, i. e., those who received a net income from their business during the entire fiscal year from products subject to the processing tax, and those who did not. The first are taxed and the second are not. Furthermore, the amount subject to the 80 per cent. tax is not uniform, since it depends upon the amount of income received. Also the percentage of income derived from the presumed shifting varies. These conclusions must be reached from the prescription, in the act itself, for figuring the liability of the taxpayer. The question of whether any part of the tax is passed on is answered, by presumption, to be an amount computed by deducting from the selling price of articles subject to the parent tax "the cost of the article plus the average margin with respect to the quantity involved." The meaning of "margin" is rather uncertain, as shown in subdivision (1) of subsection (f), 26 U.S.C.A. § 345 (f) (1). Yet even this maze seemed too clear, so it was further along declared that the tax would not be figured on the resultant of the above process, if the taxpayer's net income did not equal the amount of such presumed extent to which the burden was passed on. So he may have been enriched but need not pay. The thrifty and successful must pay, while the improvident, who did the same taxable thing need not pay. It seems, also, that the Commissioner shall have trouble in finding any definite standard for figuring.

But, if the act is illegal, where are the "extraordinary and exceptional circumstances" which require the court to disregard section 3224, and restrain the collection of the tax? The complainant has the money to pay; its business is not hurt and the remedies for refund appear ample.

No assessment has been levied. The complainant may not owe any tax. The very fact that its records disclose none and the exposure of the details of its business show none for certain, seem to indicate that none will be assessed. We cannot assume that the collector of taxes will require it to pay what it does not owe and what cannot be, legally and irrefutably, shown to be due.

The rule is, that doubt, as to a tax law, must be resolved in favor of the citizen and against the government. U. S. v. Merriam, 263 U.S. 179, 44 S.Ct. 69, 68 L.Ed. 240, 29 A.L.R. 1547; Bowers v. New York & Albany Company, 273 U.S. 346, 47 S.Ct. 389, 71 L.Ed. 676. If the Commissioner finds that the complainant cannot make a complete return, or that the tax cannot be figured, he will act accordingly.

Even if it should come to payment on protest, the law allows suit, after appeal to the executive department, and, finally, authority to compromise is specially provided for.

A restraining order is refused. The motion to dismiss may be called up by the parties under the rules.