(C. D. 1771)

J. GOLDENBERG
HUDSON SHIPPING CO., INC. } *v.* UNITED STATES

United States Customs Court, Third Division

(Dated April 4, 1956)

*Brooks & Brooks* (*Thomas J. McKenna* of counsel) for the plaintiffs.

*Warren E. Burger*, Assistant Attorney General (*Dorothy C. Bennett*, trial attorney), for the defendant.

Before EKWALL, JOHNSON, and DONLON, Judges; EKWALL, J., concurring

DONLON, Judge: Defendant moved to dismiss plaintiffs' protests in these cases. The motion to dismiss is addressed to the plaintiffs' choice of remedy. Defendant's position is that protest under section 514 of the Tariff Act of 1930 is a procedure that is not available to plaintiffs, who are seeking the refund of additional duties assessed under section 489 of the tariff act, in that section 489 itself prescribes the exclusive procedure which plaintiffs must follow. Plaintiffs, on the other hand, argue that the collector lacked authority to assess additional section 489 duties on this merchandise, under the facts shown in the record, and that protest is, therefore, the appropriate procedure to test the alleged unlawful assessment.

If, indeed, the collector lawfully liquidated these entries with additional duties under section 489, clearly plaintiffs are put to the proof of good faith required under section 489, in order to obtain remission of the duties.

The first question before us is whether plaintiffs are limited to the section 489 procedure, or whether they may protest unlawful assessment of section 489 duties. If our answer to that question is that protest is proper, then, in order to rule on defendant's motion to dismiss the protests, we must also decide whether or not the collector acted lawfully in assessing the additional duties under section 489 which are the subject of these protests.

For the purposes of the motion now before us, and only for that limited purpose, the two cases have been consolidated.

The entry documents and other official papers, including the collector's letters transmitting the protests to the court, have been placed in the record. They reveal a complicated situation as to certain meerschaum pipes imported from Turkey in two shipments in 1947.

The value at which the merchandise was entered into warehouse occasioned prolonged administrative controversy, during the course of which there was no entry for consumption. That is to say, there was no withdrawal of the merchandise from warehouse. At one time, the collector placed a "stop order" on delivery of the merchandise. Thereafter, he released his "stop order" when civil penalties, which had been asserted under section 592 of the tariff act, were compromised for a token sum paid to the collector. Cash was deposited at that time to cover whatever duties might be payable, if and when the merchandise was withdrawn for consumption or the entries were liquidated.

Shortly after this deposit of duties was made, plaintiffs applied under section 563 (b) for the collector's permission to abandon the merchandise, then still in warehouse. On May 6, 1952, such permission was granted, and the merchandise was abandoned.

On April 23, 1953, the collector liquidated one entry, number 06702. Those goods were sold on July 24, 1952, according to notation in the official papers. On January 29, 1954, he liquidated the second entry, number 03892. There is a notation in the official papers that the merchandise of entry number 03892 was sold by the collector on January 22, 1952, a date we necessarily accept for purposes of defendant's motion, in the absence of other evidence as to the date when these goods were sold. It may be noted that it is a date antecedent to abandonment.

Both entries were liquidated without regular or increased duties, but with "additional" duties assessed under section 489. Plaintiffs protest against liquidation of the entries with "additional" duties.

We are of opinion that protest is, as plaintiffs claim, a remedy available to taxpayers in order to test the legality of assessment for duties. It has been so held, as to additional duty under section 489, in *United States* v. *Cone & Co.*, 10 Ct. Cust. Appls. 120, T. D. 38375, a case in which, as here, regular duty was not assessed because the goods had been abandoned to the Government. Our appeals court sustained the plaintiff's protest.

In *Scherk Importing Co.* v. *United States*, 17 C. C. P. A. (Customs) 135, T. D. 43470, plaintiff failed to protest an alleged unlawful liquidation of goods after their abandonment by operation of law. When demand was made for payment of the deficiency established by the liquidation, the plaintiff protested that demand. The court held the plaintiff's protest came too late; that his remedy was through timely protest against the liquidation.

It is the basis of defendant's motion that the procedure provided in section 489 is the only recourse of those against whom unlawful assessment of additional duties is made; that they may seek remission of such duties, not as being unlawfully assessed, but only on the evi-

dence, proper under the statute, to afford the relief of remission for lawfully assessed duties. We do not accept this view. Protest is an attack against the validity of an assessment. It is the statutory power of the collector to assess that is challenged by protest, and that is the challenge here.

The second question presents more difficulty. Whether a collector may lawfully assess duties on merchandise that has been abandoned in warehouse within 3 years and with his permission, granted pursuant to the authority of section 563 (b), appears to be a question of novel impression. We find no precedents directly in point, and none has been cited to us in the briefs which counsel have filed. Indeed, plaintiffs cite no judicial precedents whatever.

There are judicial precedents as to other situations in which merchandise in warehouse has come off the customs line in some way other than by the usual eventual entry for consumption. Examples of such situations include the export of imported merchandise from warehouse, destruction of warehouse merchandise at the request and expense of the consignee, loss of warehouse merchandise as the result of casualty, and abandonment of warehouse merchandise after 3 years. In such cases, the governing statutory provisions are different from the provision that has to do with abandonment of warehouse merchandise within 3 years with the collector's permission.

Each case necessarily construes the particular statutory section which is controlling in that case. There have been no substantial changes in the several statutory provisions between the entry dates of this merchandise, in 1947, and the present time.

Section 557 of the Tariff Act of 1930, as amended, permits entry of merchandise for warehouse, and specifies the time when duties are payable and the basis on which they are to be computed, if and when the merchandise is withdrawn for consumption, as follows:

Any merchandise subject to duty, with the exception of perishable articles and explosive substances other than firecrackers, may be entered for warehousing and be deposited in a bonded warehouse at the expense and risk of the owner, importer, or consignee. Such merchandise may be withdrawn, at any time within three years from the date of importation, for consumption *upon payment of the duties and charges accruing thereon at the rate of duty imposed by law upon such merchandise at the date of withdrawal*; * * *. [Emphasis supplied.]

Section 557 provides further that merchandise may be withdrawn for exportation "without the payment of duties thereon" and that if the duties have been paid, they shall be refunded. This is qualified, however, by express statutory provision in section 489 that additional duties under that section "shall not be refunded *in case of exportation* of the merchandise, nor shall they be subject to the benefit of drawback." [Emphasis supplied.]

There is in section 557, also, a provision permitting the consignee to request that merchandise in warehouse be destroyed "upon pay-

ment of all charges *other than duty on the merchandise* * * * and upon such destruction the entry of such merchandise shall be liquidated *without payment of duty and any duties collected shall be refunded.*" [Emphasis supplied.]

Section 563 (a) prescribes the conditions under which the Secretary of the Treasury is authorized "to abate or refund, as the case may be," the duties upon merchandise that has been injured or destroyed by casualty, in whole or in part, while in warehouse.

Section 559 provides that "Merchandise upon which any duties or charges are unpaid, remaining in bonded warehouse beyond three years from the date of importation, shall be regarded as abandoned to the Government and shall be sold under such regulations as the Secretary of the Treasury shall prescribe * * *." The proceeds of sale are to be paid into the Treasury "subject to the payment to the owner or consignee of such amount, if any, as shall remain after deduction of duties, charges, and expenses."

It appears that the statute is specific in providing relief from certain duties, only when warehouse merchandise is exported, and relief from duties, without exception, when warehouse merchandise is destroyed at the consignee's request or when it is injured or destroyed by casualty. There is no similar provision for relief from duties when warehouse merchandise is abandoned by operation of law. While the statute is silent as to liability of the importer for duties in excess of the proceeds of sale of warehouse goods *abandoned after 3 years by operation of law*, the regulations of the Secretary spell out such liability.

That, of course, is not this case. Here, there was abandonment within 3 years and by permission, not by operation of law.

Section 563 (b) is pertinent. It reads as follows:

Under such regulations as the Secretary of the Treasury may prescribe and subject to any conditions imposed thereby the consignee may at any time within three years * * * from the date of original importation, abandon to the Government any merchandise in bonded warehouse, *whereupon any duties on such merchandise may be remitted or refunded as the case may be*, but any merchandise so abandoned shall not be less than an entire package and shall be abandoned in the original package without having been repacked while in a bonded warehouse (other than a bonded manipulating warehouse). [Emphasis supplied.]

Cases cited in the brief filed by defendant may be distinguished. In several instances, the statutes construed vary in significant respects from the statute that is controlling of our decision; and the decisions, moreover, often turn on facts not found in the instant case. Typical of such a case to be distinguished is *Swayne, Hoyt & Co.* v. *United States*, 21 Treas. Dec. 642, T. D. 32072, G. A. 7308, which is cited by defendant as authority for the proposition that warehouse merchandise abandoned under section 563 (b) entitles the importer to

refund of regular duties only. Whether the argued proposition is or is not sound, at least it can be said that the *Swayne* decision is not authority for the proposition thus broadly stated. The opinion in the *Swayne* case makes clear the very distinction which the brief tends to obscure.

In the *Swayne* case, the United States general appraisers stated the question before them succinctly as follows:

> * * * The question then for us to decide is as to *whether*, under the circumstances of this case, *the importers had a right to abandon the goods to the Government and avoid the payment of duties.* [Emphasis supplied.]

The issue, then, was the right to abandon. The controlling statute was the Tariff Act of 1909, and, in particular, subsections 7 and 22 of section 28. Plaintiff had given notice of abandonment within the 10-day period required by statute. The question was whether this notice effected abandonment under subsection 22 of section 28 or whether, as the defendant contended, the circumstances of the case precluded the right to abandon because of certain provisions of subsection 7 of section 28. The general appraisers denied the plaintiff's right to abandon the merchandise, stating their opinion as follows:

> * * * We think it was intended to give this right [of abandonment] to the importer dependent upon no conditions except such as are mentioned in the statute and to be determined entirely with reference to his estimation of landed value or condition of the goods and his subsequent ability to handle them with profit; and that right being given to him independently of the value which might be fixed by the appraisement should, in the absence of fraud, be secured to him with the right to avoid the payment of the duty, as provided in subsection 22 of section 28. In this case the valuation on entry being declared fraudulent by statute, the right to abandon and avoid any part of the duty is denied. * * *

In the instant case, there is no issue as to right to abandon. Whatever objection to abandonment might have been asserted, and several suggest themselves, the Government is precluded from raising that issue on this motion, because permission to abandon the merchandise in the instant case was, in fact, granted by the collector. There was no resort here to forfeiture, as in the *Swayne* case. The plaintiffs here are before the court, therefore, in quite a different situation from that of the plaintiff in the *Swayne* case. There is, moreover, substantial difference between the sections found in the 1909 and 1930 statutes, applicable there and here.

The decision of the United States Court of Appeals for the Second Circuit in *United States* v. *One Case Paintings*, 99 Fed. Rep. 426, is likewise cited by defendant as authority for the proposition that plaintiffs are entitled to refund of regular duties only. It also is not in point. Indeed, the learned judge who handed down the opinion in

that case expressly negated the notion that his decision was authority for any such proposition. The opinion, at pages 428, 429, states:

* * * No question is presented here as to whether the government * * * can collect an additional or penal duty under one section, and forfeit the goods under another for the same act of undervaluation. * * *

As indicated in the cited case, the merchandise there came off the customs line through forfeiture. It was not abandoned with permission, as in the instant case. That the court clearly recognized the significance of this difference is indicated in the following language, found on page 429:

* * * If the statute allows the importer to abandon his goods, and thereupon relieves him from the payment of duty thereon, of course the government cannot collect duty; * * *.

The statute in the instant case allows the importer to abandon warehouse merchandise within a 3-year period, with the collector's permission. The importer requested such permission. It was granted.

In *Helwig* v. *United States*, 188 U. S. 605, 47 L. ed. 614, the United States Supreme Court construed provisions of the Tariff Act of 1894 on the question of jurisdiction of an action to recover certain duties assessed for undervaluation. The question presented was whether the district court had exclusive jurisdiction of a suit to recover such penalties, because under the then moiety law a portion of penalties collected (but not duties) was payable to certain customs officers rather than to the Government.

It might not be necessary here to mention the *Helwig* case but for the fact that it was one of the cases mentioned in *Les Parfums de Molyneux* v. *United States*, 26 C. C. P. A. (Customs) 323, C. A. D. 36, which also has been cited by defendant, in which our appeals court stated, at page 334:

It seems quite evident to us, from the legislative history recited, that the Congress, in the 1897, 1909, and 1913 tariff acts, intended to meet the condition created by court decisions respecting the penal character of additional duties, and, therefore, exercised the authority which the Supreme Court in the *Helwig* case, *supra*, declared it might exercise, to declare that they should not be regarded as in the nature of a penalty, and in that connection intended also to guard against their remission or refund, no matter what the intent of the importer was in making undervaluation.

In the *Les Parfums* case, the decision turned on the last proviso of section 489, disallowing any refund of additional duty in cases of exportation, as indicated in the following excerpt in the opinion of the court, found on page 329:

From the foregoing sections of the Revised Statutes it is observable that where goods upon which duties had not been paid were withdrawn from warehouse and exported it was not required that duties should be paid thereon and, in cases

where the duties had been paid, the owners were entitled to a return thereof, and this seemingly would have included the additional duties which it was said, in the acts recited, should not be regarded as penal, had it not been for the provisions to the effect that those particular duties should not be remitted or refunded in cases of exportation.

It does not necessarily follow, therefore, that the decision of the *Les Parfums* case is controlling in this case.

It should be stated again, at the risk of some repetition, that the warehouse merchandise in the cases before us was not forfeited; it was not exported; it was not destroyed either at the request of the importers or by casualty; nor was it abandoned by operation of law. It was abandoned pursuant to statute, by application and with the collector's permission.

Section 563 of the Tariff Act of 1922, entitled "ALLOWANCE FOR LOSS—ABANDONMENT" included in a single paragraph the provisions applicable to a variety of circumstances in which warehouse merchandise comes off the customs line. In the Tariff Act of 1930, section 563 is entitled "ALLOWANCE FOR LOSS—ABANDONMENT OF WAREHOUSE GOODS," and the section is subdivided into paragraph (a), entitled "ALLOWANCE," and paragraph (b), entitled "ABANDONMENT." In addition to the separation of these statutory provisions, the provisions in the two statutes applicable to abandonment present certain important differences. For clarity, the pertinent provisions of the two statutes are here quoted:

Section 563, Tariff Act of 1922:

* * * *And provided further,* That the consignee may, with the consent of the Secretary of Treasury, at any time prior to three years from the date of original importation abandon to the Government any merchandise in bonded warehouse and be relieved of the payment of duties thereon: *Provided,* That the portion so abandoned shall not be less than an entire package and shall be abandoned in the original package without having been repacked while in bonded warehouse. [Italics quoted.]

Section 563, Tariff Act of 1930, subdivision (b):

Under such regulations as the Secretary of the Treasury may prescribe and subject to any conditions imposed thereby the consignee may at any time within three years * * * from the date of original importation, abandon to the Government any merchandise in bonded warehouse, whereupon any duties on such merchandise may be remitted or refunded as the case may be, but any merchandise so abandoned shall not be less than an entire package and shall be abandoned in the original package without having been repacked while in a bonded warehouse (other than a bonded manipulating warehouse).

The Secretary of the Treasury has issued regulations, published as part 15 of Customs Regulations of the United States, that are entitled "RELIEF FROM DUTIES ON MERCHANDISE LOST, STOLEN, DESTROYED, INJURED, ABANDONED, OR SHORT-SHIPPED." Section 15.4 is entitled "Abandonment or destruction of merchandise in bond" and section

15.6 is entitled "Disposition of abandoned merchandise and proceeds of sale."

These regulations throw light on the problems created by the somewhat indefinite language of section 563 (b). They are as follows:

*15.4 Abandonment or destruction of merchandise in bond.*—(a) Applications for the abandonment or destruction of merchandise in bond pursuant to section 563 (b) or 557 (c), Tariff Act of 1930, as amended, shall be filed with the collector by the consignee or his duly qualified representative on customs Form 3499, with the title modified to read "Application and Permit to Abandon (or Destroy) Goods in Bond." When an application is for permission to destroy, the proposed method of destruction shall be stated in the application and be subject to the approval of the collector. No application to abandon or destroy warehoused merchandise shall be approved unless concurred in by the warehouse proprietor.

  *   *    *    *    *    *    *

(c) When in the opinion of the collector the abandonment of merchandise under section 563 (b), Tariff Act of 1930, as amended, will involve any expense or cost to the Government, or the merchandise is worthless or unsalable, or cannot be sold for a sum sufficient to pay the expenses of sale, abandonment under such section 563 (b) shall not be permitted unless the applicant deposits a sum which in the opinion of the collector will be sufficient to save the Government harmless from any expense or cost resulting from such abandonment. The sum so advanced shall be placed in a special deposit account and expended to cover the cost of destruction or to meet any deficit should the merchandise be sold and the proceeds of sale be less than the expenses of such sale. After meeting such expenses or deficit, any balance remaining shall be refunded to the applicant. However, the applicant may elect to destroy such merchandise under customs supervision, pursuant to the provisions of section 557, Tariff Act of 1930, as amended.

(d) Where the above conditions are met, collectors of customs may grant applications, but in any case where doubt exists the case shall be referred to the Bureau. * * *

*15.6 Disposition of abandoned merchandise and proceeds of sale.*—(a) The disposition of merchandise abandoned pursuant to section 506 (1) or 563 (b), Tariff Act of 1930, as amended, and not retained for official use, shall be governed by the regulations of the General Services Administration applicable to the Bureau of Customs. If the merchandise is cleared for sale, it shall be sold in accordance with the applicable provisions of part 20, unless it is worthless or it shall appear probable that the expenses of sale will exceed the proceeds. If the merchandise is sold, no part of the proceeds shall be returned to the importer.

(b) If the merchandise or any part thereof is worthless or it appears probable that the expenses of its sale would exceed the proceeds, it shall be destroyed or otherwise disposed of as the collector may direct. * * *

These regulations indicate an association between the right of abandonment, under section 563 (b), and the right to have warehouse merchandise destroyed under section 557. Indeed, the Secretary makes it a condition of either request that the Government shall be made whole for the expenses, whether of sale or destruction, and gives an applicant for permission to abandon the privilege of changing his request to an application to have merchandise destroyed, in the

event the collector, on the ground that the merchandise cannot be sold for a sum sufficient to pay the expenses of sale, should require a deposit to save the Government harmless "from any expense or cost resulting from such abandonment."

It seems clear that the concern of the Secretary, evidenced in these regulations, is the same in both situations, namely, that "expenses" shall be met out of the goods and, if the proceeds are insufficient, then by the importer, alike for permissive abandonment under section 563 (b) or request destruction under section 557. Indeed, the importer is permitted by the Secretary to switch his application if he has misjudged relative costs.

The regulations are silent, in both instances, as to duties. This, too, is significant. The statute is quite clear as to what dutiable status is when goods are destroyed under section 557.

* * * upon such destruction the entry of such merchandise shall be liquidated without payment of duty and any duties collected shall be refunded.

The language of section 563 (b) as to dutiable status is less precise.

* * * whereupon [i. e., on abandonment with permission] any duties on such merchandise may be remitted or refunded as the case may be * * *.

Doubts in taxing statutes are to be resolved in favor of the taxpayer. This is axiomatic, and authorities need not be cited. It is clear that no duties need be paid, and paid duties are to be refunded when bonded merchandise is destroyed on request under section 557. It is clear that the Secretary regarded the problem, alike under section 557 and section 563 (b), to be the need to save the Government harmless from expenses whether of destruction or of sale, and he has given the importer wide latitude to elect whichever promises a lower cost to him.

In construing the force and effect of "may" as permissive, rather than directive, it is pertinent to give, where possible, such construction as will save the statute and thus give effect to congressional intent. In *Supervisors Rock Island Co*. v. *United States ex. rel. State Bank*, 71 U. S. 435, 18 L. ed. 419, the United States Supreme Court construed statutory language which provided that certain officers "may, if deemed advisable, levy a special tax * * *." Holding that the statute, though permissive in form, was in fact peremptory, the Supreme Court in its opinion, on pages 446, 447, stated:

The conclusion to be deduced from the authorities is, that where power is given to public officers, in the language of the act before us, or in equivalent language— whenever the public interest or individual rights call for its exercise—the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his. It is placed with the depositary to meet the demands of right, and to prevent a failure of justice. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless.

In all such cases it is held that the intent of the legislature, which is the test, was not to devolve a mere discretion, but to impose "a positive and absolute duty."

The same proposition is stated by the Pennsylvania Supreme Court in the case *In re Fisher*, 23 Atlantic (2d) 878, at page 879, as follows:

As the purpose to be achieved by this statute is a public one and by it power is given to public officers which affects the rights of third persons the word "may" is to be read "shall. * * * Moreover, to reach a conclusion as to constitutionality the word "may" in a statute is to be read "shall" if such reading leads to constitutionality. 59 C. J. 1082, and cases cited.

It is not to be presumed that the Congress intended to give to executive officers an unconstitutional privilege of selecting at whim those who, having met the statutory conditions, "may" be taxed. The legislative choice of the word "may" is compatible with a clearly constitutional construction, namely, that all those within the class will have duties either remitted or refunded, as "may" be appropriate in each case. This construction supports the statute and the congressional intent, and it is a reasonable construction. Moreover, it goes along with the position taken by the collector in this case, so far as regular and increased duties are concerned.

But, if the collector is required to liquidate these entries without duties, may he nonetheless liquidate the entries subject to additional duties under section 489? We are of opinion that the answer is no. There is nothing in section 563 (b), or the regulations under it, that makes a distinction as between regular, increased, and additional duties, in the case of merchandise abandoned with permission.

It has long been held that additional duties under section 489 are not penal. They are duties; that is, taxes. *United States* v. *American Metal Co.*, 12 Ct. Cust. Appls. 440, T. D. 40612. Old cases construing earlier acts are often irrelevant, where they turn on the penal nature of additional duties *under those acts.*

We are aware that section 489 has been repealed. However, it was fully effective both when this merchandise was entered and when the several entries were liquidated, and therefore it must be construed for the purpose of our decision.

Defendant's motion to dismiss the protests is denied.

### CONCURRING OPINION

EKWALL, Judge: I agree with my colleagues that the motion of Government counsel to dismiss the protests should be denied, for the reason that I construe the protests as a claim against the legality of the liquidations and, as such, subject to protest under section 514 of the Tariff Act of 1930. I express no opinion on the merits of the controversy, that question, as I see it, not being before the court.