(C. D. 1842)

H. F. KEELER v. UNITED STATES

United States Customs Court, Third Division

(Decided January 30, 1957)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Joseph E. Weil*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and MOLLISON, Judges; DONLON, J., dissenting

JOHNSON, Judge: This suit involves an American-made airplane, repaired or altered in Canada, which was assessed with duty by the

collector at 15 per centum ad valorem under paragraph 370 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802. It is claimed that duty should have been levied only upon the cost of the repairs or alterations, pursuant to the provisions of paragraph 1615 (g) of said tariff act, as amended by the Customs Administrative Act of 1938.

At the trial, plaintiff and defendant each called two witnesses and certain documents were introduced into evidence. The following facts appear from the record presented:

The airplane involved herein is a Grumman Goose Aircraft manufactured at Bethpage, Long Island, N. Y. In the latter part of 1952, it was flown to Vancouver International Airport, Canada, for the purpose of having it repaired. It remained there until March 23, 1953, during which time repairs were made at a cost of $4,590.53 (Canadian currency). The plane was flown back to the United States on March 23, 1953, by an employee of the plaintiff, accompanied by Harold F. Rodgers, aircraft chief engineer of the Canadian firm which performed the work. At that time, the latter had with him invoices showing the cost thereof.

No entry was made covering the airplane or the repairs when it arrived in the United States. Subsequently, in May 1953, it was seized by customs officials, pursuant to section 592 of the Tariff Act of 1930, for failure to file a formal entry. It was released upon deposit of $21,000 and an application for relief from forfeiture was made. The Bureau of Customs remitted forfeiture on condition that the sum of $250 be unconditionally deposited and that formal entry be filed covering importation of the plane with payment of estimated duties on or before December 31, 1953 (plaintiff's exhibits 1 and 6).

Entry was made on December 30, 1953. The aircraft was valued in United States currency at $50,953 and the repairs at $4,678. There were filed in connection with the entry a copy of the certificate of registration of the aircraft, issued by the Department of Commerce (Civil Aeronautics Administration) on June 5, 1952, and the consular invoice. Thereafter, in January 1954, there were filed an invoice and a declaration of Harold Rodgers, describing the repairs made and giving the cost thereof, and an affidavit of the plaintiff identifying the plane and stating that the cost of repairs was correctly given in the entry and the declaration of Rodgers. Duty was assessed on the total value of the plane and the repairs.

It was conceded at the trial that the plane was taken to Canada for the purpose of being repaired; that plaintiff did not file an application and affidavit on customs Form 4455 prior to the departure of the plane; that the plane was not delivered to the collector for examination and identification prior to exportation; that no entry was made prior to the

one involved herein; that no certification of registration, customs Form 4455, was issued or surrendered.

The question before the court is whether duty should have been assessed only upon the value of the repairs under paragraph 1615 (g) of the Tariff Act of 1930, as amended, and the regulations issued thereunder.

The pertinent provisions of the statute and of the regulations are as follows:

Par. 1615 [as amended by the Customs Administrative Act of 1938].

\* \* \* \* \* \* \*

(g) Any article exported from the United States for repairs or alterations may be returned upon the payment of a duty upon the value of the repairs or alterations at the rate or rates which would apply to the article itself in its repaired or altered condition if not within the purview of this subparagraph.

(h) The allowance of total or partial exemption from duty under any provision of this paragraph shall be subject to such regulations as to proof of identity and compliance with the conditions of this paragraph as the Secretary of the Treasury may prescribe.

## Customs Regulations of 1943, as amended:

### 10.8 Articles exported for repairs or alterations.

\* \* \* \* \* \* \*

(b) Prior to the exportation of articles to be subject to duty on the value of repairs or alterations made abroad, as provided for in paragraph 1615 (g), an affidavit and application in duplicate on customs Form 4455 shall be filed with the collector of customs a sufficient length of time before the departure of the exporting conveyance to permit the examination of the articles.

(c) The owner or exporter shall be notified on customs Form 4455 to deliver the articles to the place designated by the collector for examination. \* \* \* Photographs or other means of identification shall be furnished appraising officers when required.

(d) Upon the receipt of the reports of the appraiser and inspector showing the examination of the articles and their lading on the exporting conveyance, the collector shall deliver to the exporter the duplicate copy of customs Form 4455.

\* \* \* \* \* \* \*

(f) If at the time of return the value of the articles in their repaired or altered condition exceeds $100, there shall be filed in connection with the entry an invoice showing separately the value of the articles in their repaired or altered condition and the cost or value of the repairs or alterations. This invoice, whether or not required to be certified by an American consul, shall have attached a declaration of the person in the foreign country who made the repairs or alterations, which declaration shall be certified in the same manner as a consular invoice. \* \* \*

(g) There shall also be filed in connection with the entry the certificate of registration, customs Form 4455, and a declaration made by the consignee, owner, or an agent having knowledge of the facts that the articles entered are the identical articles covered by the certificate of registration and that the cost or value of the repairs or alterations is correctly stated in the entry. In cases where an article exported and repaired or altered abroad is imported by a person who is not a regular importer and the exportation was not made in accordance with this section, the collector, if satisfied as to the bona fides of the transaction

and that the exporter was ignorant of the regulation requirements, may waive the production of the certificate of registration, customs Form 4455, and compliance with so much of these regulations as relates to the exportation under such certificates.

\*　\*　\*　\*　\*　\*　\*

**10.42　Automobiles and other vehicles, boats, teams, and saddle horses taken abroad.**—(*a*)　Automobiles, aircraft, and other vehicles, boats, teams, and saddle horses of domestic origin, or of foreign origin if duty-paid, together with their accessories, taken abroad by the owner or his agent for noncommercial use and returned for the account of such owner shall be admitted without the payment of duty, except as provided for in paragraph (*b*), and without the requirement of a certified invoice, upon being satisfactorily identified.

(*b*)　Repairs made abroad to such articles if incidental to use abroad are not subject to duty, but repairs not incidental to use abroad and alterations and additions made abroad shall be assessed with duty upon their value at the rate at which the article itself would be dutiable if imported.　Accessories acquired abroad are dutiable as if separately imported.　Certified invoices shall not be required for such repairs, alterations, and additions made abroad, or for such accessories acquired abroad.

(*c*)　Upon the request of the owner or his agent, the collector of customs shall cause any such article to be examined before it is taken abroad and issue a certificate of registration therefor on customs Form 4455.　On the return of the article, such certificate may be accepted as satisfactory identification for the purpose of admitting the article free of duty without the requirement of a certified invoice, whether the article is covered by a baggage declaration or by a regular entry, provided the article agrees with the description contained in the certificate.　The state registration card for an automobile, the certificate of registration issued by the Department of Commerce for an aircraft, or the yacht license or motorboat identification certificate for a pleasure boat may be accepted under the same conditions as, and in lieu of, customs Form 4455 and be given the same force and effect.

(*d*)　Regular entry or entry on a baggage declaration shall be required if the owner or his agent is unable to produce a proper registration card or certificate covering the article, of if duty is to be collected, or if a claim for free entry under the $200 or $300 returning resident's exemption with respect to the articles is to be made. \* \* \*

\*　\*　\*　\*　\*　\*　\*

The exemption provided in paragraph 1615 (g), *supra*, and similar paragraphs in previous tariff acts is a privilege, and compliance with reasonable regulations prescribed by the Secretary of the Treasury has been held mandatory and a condition precedent to entry upon payment of duty on the repairs only.　*Page & Jones* v. *United States*, 26 C. C. P. A. (Customs) 124, C. A. D. 5; *Gilbert W. Greene* v. *United States*, 13 Cust. Ct. 273, Abstract 49676; *Pacific Customs Brokerage Co.* v. *United States*, 71 Treas. Dec. 530, T. D. 48887; *Max J. Bernheim* v. *United States*, 28 Treas. Dec. 647, T. D. 35330.

For example, although the circumstances in *Page & Jones* v. *United States*, *supra*, worked a hardship on the importers, it was, nevertheless, held that the regulations had to be complied with.　That case involved a British vessel disabled on the high seas and towed into an American port.　The engine had to be removed and sent to England

for repairs. A transportation entry was presented at that time and, when the engine was returned, a consumption entry was filed and duty assessed not only on the cost of repairs but on the value of the engine itself. The customs broker testified that, at the time of the first entry, he thought that the proper way to handle the matter was to register the shipment under a provision which permitted "importation of machinery with repairs with a limitation of duties on the repairs only." Customs officials did not agree with him and this was not done. At the trial, plaintiffs contended that, although they had not complied with the regulations, they had acted in good faith; that the collector had made strict compliance with the regulations impossible; and that the collector by his conduct had waived compliance with the regulations. The court held that there was nothing in the record to indicate that the collector had actually or constructively waived compliance with the regulations, and the protest was overruled.

The regulations before us provide that where exportation is not made in accordance therewith, compliance with certain provisions may be waived by the collector, if he is satisfied as to the good faith of the transaction and that the exporter was ignorant of the requirements. In the instant case, there were no circumstances, such as those in *Page & Jones* v. *United States, supra,* which prevented the plaintiff from meeting the requirements, and compliance was not waived by the collector (plaintiff's exhibit 4).

Plaintiff admits that customs Form 4455 was not applied for or issued prior to exportation, as provided in section 10.8 (*b*), (*c*), and (*d*) of the regulations, but contends that, in view of section 10.42, this is of no consequence. It is also admitted that said customs Form 4455 was not filed in connection with the entry, as provided in section 10.8 (*g*), but it is claimed that the certificate of registration, issued by the Department of Commerce, should have been accepted in lieu of customs Form 4455, as provided in section 10.42 (*c*).

We must first consider whether or not section 10.42 is applicable and whether any part of it supersedes or modifies section 10.8. By their terms, the two sections have to do with two different situations. Section 10.8 applies to articles exported for repairs or alterations, and section 10.42 (so far as here pertinent) applies to automobiles and other vehicles taken abroad for noncommercial use.

Under section 10.42, vehicles taken abroad for noncommercial use are not subject to duty upon their return, provided they are satisfactorily identified. Identification may be made by a certificate of registration on customs Form 4455 which the owner has previously obtained, or, in the case of aircraft, by a certificate of registration, issued by the Department of Commerce. It is also provided that repairs made to *such* vehicles are not subject to duty if incidental to

the use abroad, but repairs not incidental to such use and alterations or additions are dutiable. The repairs with which section 10.42 is concerned are those made to vehicles taken abroad for noncommercial *use* and not to vehicles sent abroad solely for the purpose of being repaired. While having a vehicle repaired may be necessary to its use, that is not using the article itself for the purpose for which it was made. Therefore, exporting an airplane for repairs is not a noncommercial, or any other, *use* of such article.

In further support of this view, we note that section 10.42 provides an informal entry procedure primarily to cover vehicles taken abroad for pleasure use by their owners. Section 10.8, on the other hand, contains detailed provisions requiring the examination and identification of articles to be sent abroad for repairs or alterations and for the filing of prescribed documents on their return. Certainly, it was not intended that an exception should be made in favor of vehicles sent abroad solely for the purpose of having extensive repairs made.

While plaintiff apparently concedes that some parts of section 10.8 are applicable, he contends that, in view of section 10.42 (*c*), the collector should have accepted the certificate of registration, issued by the Department of Commerce, in lieu of customs Form 4455. The only purpose of section 10.42 (*c*) is to provide a means of identifying a vehicle upon its return to this country. It has nothing to do with the requirements of section 10.8 (*b*), (*c*), and (*d*) as to action to be taken prior to exportation of an article for repairs or alterations. Even if the certificate issued by the Department of Commerce might be accepted in lieu of customs Form 4455 to meet the requirement of section 10.8 (*g*), production of such certificate *at the time of importation and entry* does not obviate the necessity of complying with section 10.8 (*b*), (*c*), and (*d*) *at the time of exportation*. These subsections not only require that an affidavit and application be filed before exportation, but that the articles themselves be delivered for examination. These provisions are reasonable, since a prior inspection will aid customs officials in determining subsequently what repairs were made and what their value was.

Furthermore, section 10.8 (*f*) provides that, if at the time of return the value of the articles exceeds $100, there shall be filed in connection with the entry an invoice showing separately the value of the articles and the cost or value of the repairs, and a declaration of the person abroad who made the repairs. This subsection contemplates that entry be made at the time of the return of the article, which was not done here; and that certain papers be filed in connection with that entry. While those papers were produced in the instant case, they were not presented at the time of the return of the airplane, nor even at the time entry was finally made, but in the following month. It has been held that regulations requiring documents to be filed "in

connection with the entry" mean that such filing shall be on the date of entry, or, where a bond has been filed, within the bonded period. *Border Brokerage Company et al.* v. *United States*, 36 C. C. P. A. (Customs) 83, 87, C. A. D. 402; *Charles M. Wormser* v. *United States*, 32 Cust. Ct. 163, C. D. 1597, and cases there cited.

Under paragraph 1615 (g), *supra*, importers are given the privilege of sending articles abroad for repairs or alterations and of paying duty upon their return on the value of the repairs and alterations only, provided that the regulations issued by the Secretary of the Treasury have been met. In the instant case, the airplane was sent abroad for no other purpose than having it repaired. The applicable regulations, therefore, are those contained in section 10.8, Customs Regulations of 1943, as amended, and not those in section 10.42. Plaintiff did not comply with the portion of section 10.8 applicable prior to exportation of the airplane nor with those pertaining to entry and filing of documents upon its return after having been repaired. The regulations are not unreasonable; they have not been superseded or modified by section 10.42; and compliance has not been waived by the collector. Under the circumstances of this case, the privilege allowed by paragraph 1615 (g), *supra*, may not be granted.

The protest is overruled and judgment will be rendered for the defendant.

### DISSENTING OPINION

DONLON, Judge: I do not concur in the decision of the majority.

The trial record and briefs filed in this case are confused by considerations extraneous to the issues raised by the pleadings.

There is no issue before us as to penalty. There is no issue before us as to forfeiture of the plane. The only issue before us is what are the "regular duties" that are properly assessable on the facts of record. Are they duties on the American plane itself as repaired abroad, or duties solely on the value of the foreign repairs?

Delayed formal entry having been authorized, no disability as to dutiable status arises by reason of the lateness of the permitted entry filing. Entry pursuant to the Commissioner's permit is valid entry.

It should be noted that this aircraft, one of domestic manufacture, is entitled to free entry on proof of domestic status adduced by certificate of registration, whether section 10.42 or section 10.8 applies, provided there is the requisite showing of good faith if it is found, as the majority holds, that section 10.8 is applicable. If section 10.42 applies, as I hold, there is no need to explore the subsidiary issue as to good faith. The certificate of registration is permissible proof of domestic origin in a case that falls within the scope of section 10.42.

It is well settled that a specific provision of the tariff law or customs regulations will prevail in competition with a general provision. It is not necessary to cite authorities in support of this principle. The competition here is between a section of the regulations that particularly deals with foreign repairs to aircraft taken abroad "for noncommercial use" (sec. 10.42) and a general provision as to "articles" sent abroad to be repaired or altered (sec. 10.8).

Defendant argues that plaintiff's airplane was not used noncommercially in its flight to Canada. Certainly, the airplane was used, and there is no evidence that this use, either on the flight to or from Canada, was to carry cargo or passengers, concededly commercial uses, in which event provisions other than either section 10.42 or section 10.8 would apply. On the facts before us, it is clear that plaintiff's plane was in use as aircraft when it was flown to Canada under its own power and when it was flown back under its own power from Canada to the United States, and that this use was noncommercial.

Section 10.42 (c) provides, as plaintiff contends, that "the certificate of registration issued by the Department of Commerce for an aircraft * * * may be accepted under the same conditions as, and in lieu of, customs Form 4455 and be given the same force and effect."

The original of the certificate of registration of this airplane was exhibited to the collector at the time entry was made, and a photostatic copy was filed with the entry (R. p. 8). There is no room for objection that the original certificate of registration of the airplane was not left with the collector. Indeed, no such objection is made.

There remains for consideration whether the word "may" in section 10.42 (c), above quoted, required the collector, on the facts of record, to recognize the alternative proof of domestic origin therein provided, namely, a certificate of registration, issued by the Department of Commerce; or whether the word "may" permitted him, in his discretion, to disregard such proof and proceed to assess duty without giving weight to the permitted proof of domestic origin of the plane.

We recently considered this subject in *J. Goldenberg et al.* v. *United States*, 36 Cust. Ct. 172, C. D. 1771, from which I quote as follows:

* * * In *Supervisors Rock Island Co.* v. *United States ex. rel. State Bank*, 71 U. S. 435, 18 L. ed. 419, the United States Supreme Court construed statutory language which provided that certain officers "may, if deemed advisable, levy a special tax * * *." Holding that the statute, though permissive in form, was in fact peremptory, the Supreme Court in its opinion, on pages 446, 447, stated:

The conclusion to be deduced from the authorities is, that where power is given to public officers, in the language of the act before us, or in equivalent language—whenever the public interest or individual rights call for its exercise—the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be

done. The power is given, not for their benefit, but for his. It is placed with the depositary to meet the demands of right, and to prevent a failure of justice. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless.

In all such cases it is held that the intent of the legislature, which is the test, was not to devolve a mere discretion, but to impose "a positive and absolute duty."

The same proposition is stated by the Pennsylvania Supreme Court in the case *In re Fisher*, 23 Atlantic (2d) 878, at page 879, as follows:

As the purpose to be achieved by this statute is a public one and by it power is given to public officers which affects the rights of third persons the word "may" is to be read "shall." * * * Moreover, to reach a conclusion as to constitutionality the word "may" in a statute is to be read "shall" if such reading leads to constitutionality. 59 C. J. 1082, and cases cited.

It is not to be presumed that the Congress intended to give to executive officers an unconstitutional privilege of selecting at whim those who, having met the statutory conditions, "may" be taxed. The legislative choice of the word "may" is compatible with a clearly constitutional construction, namely, that all those within the class will have duties either remitted or refunded, as "may" be appropriate in each case.

It should again be noted that there is no doubt that this plane was of domestic origin, nor that permitted proof of domestic registration was tendered. The sole question is whether the collector was warranted in ignoring this proof and assessing duty on the plane without regard thereto. I am of opinion the proof filed with the entry brought this plaintiff within the class of those required to pay duty only on the foreign repairs or alterations.

If section 10.42 applies, it is not necessary to consider section 10.8. This is not to decide either that the plaintiff is or is not blameless in the matter of entry. As noted earlier, that is an issue which is not before us. It was before the Commissioner and the Acting Secretary of the Treasury in the penalty and forfeiture proceeding, and we have no right or need to review their decision. Late entry was expressly permitted. Such entry was made. We are called upon to decide only what are the regular duties plaintiff is required, by law, to pay.

The protest should be sustained and judgment entered for plaintiff.